883 A.2d 511

**Theodore C. ROTHROCK and Douglas Rothrock, Appellees**

v.

**ROTHROCK MOTOR SALES, INC., Appellant.**

Supreme Court of Pennsylvania.

Argued April 14, 2004.

Decided Sept. 28, 2005.

298

Angela Marie Heim, Carl D. Bucholz, Philadelphia, for Rothrock Motor Sales, Inc.

Daniel S. Weinstock, Philadelphia, for Theodore & Douglas Rothrock.

Before: CAPPY, C.J., CASTILLE, NIGRO, SAYLOR, EAKIN, BAER, JJ.,

## OPINION

Justice BAER.

 We granted allowance of appeal to determine whether the Superior Court erred in extending a previously created exception to the at-will employment doctrine.[1] For the reasons that follow, we affirm.

The Appellees, Theodore Rothrock (Ted) and Douglas Rothrock (Doug), father and son, respectively, were employed as at-will employees at Rothrock Motor Sales, Inc. (Motor Sales). Bruce Rothrock (Bruce), Ted's brother, was Motor Sales' "owner" and president.[2] Ted was Motor Sales' body shop manager, and Doug worked for Ted as a body shop technician. Accordingly, Ted (the father) was Doug's (the son) direct supervisor.

Doug alleged that he suffered a work-related injury to his neck unloading heavy computer equipment while working at Motor Sales on or about March 12, 1992. Doug reported his injury to Motor Sales' personnel coordinator on May 28, 1992,

---

1. The at-will employment doctrine has historically provided that absent an employment contract, an employer is free to terminate an employee at any time, for any reason. *Henry v. Pittsburgh & Lake Erie Railroad Company*, 139 Pa. 289, 21 A. 157 (1891); *McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283 (2000). Pennsylvania has been consistently reluctant to erode this convention. Nevertheless, several narrow exceptions, some of which will be discussed *infra*, have been carved out based upon matters of public policy. *See e.g., Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (1998) (holding that an employee was wrongfully terminated for filing a workers' compensation claim); *Highhouse v. Avery Transportation*, 443 Pa.Super. 120, 660 A.2d 1374 (1995) (concluding that an employee was wrongfully discharged for filing an UC claim); *Raykovitz v. K Mart Corp.*, 445 Pa.Super. 378, 665 A.2d 833 (1995)(same); *Kroen v. Bedway Security Agency*, 430 Pa.Super. 83, 633 A.2d 628 (1993) (holding that an employee was wrongfully discharged for refusing to submit to a polygraph test).

2. The record is silent as to whether Bruce was Motor Sales' sole shareholder, but as he was characterized as the sole "owner," we make that assumption. Whether there were minority holdings in Motor Sales is not relevant to the issues before us.

two months after the incident. On the same day, Motor Sales filed the mandated Employer's Report of Occupational Injury or Disease with the Bureau of Workers' Compensation.[3] Ted was aware of the work-related injury, and that Doug had reported it to Motor Sales' personnel director in May. Accordingly, in June of 1992, when Bruce contacted Ted to ask whether he had any knowledge of Doug's pending workers' compensation (WC) claim, Ted responded that he knew nothing about a filed claim, but was aware of the incident and that Doug had reported it to Motor Sales' personnel director. Bruce was adamant that Doug had not been injured at work and argued that Doug had actually been hurt in May, 1989, in a stockcar accident.[4]

Bruce instructed Ted to have Doug sign a form releasing Motor Sales and thereby waiving Doug's WC benefits. As the Superior Court noted, Ted testified at trial that Bruce told him: "[I]f I [Ted] didn't do this, not one [presumably Doug] would be gone, two [presumably Doug and Ted] would be gone. Meaning that if I didn't get it done, not one [would be] fired, two are fired." Ted spoke to Doug sometime in June of 1992 about not pursuing his WC claim, explaining that if Doug did not sign the release abrogating his rights under the Workers' Compensation Act, Bruce would fire them both. Doug initially agreed to sign the release. Ted testified that Doug said, "Dad, to save your job, I will sign it." Ted evidently had a change of heart, and later told Doug that he need not sign the release. Doug presumably took his father's

3. This report was filed by Motor Sales pursuant to 77 P.S. § 994(b) entitled, Employers' Reports of Injuries, and providing as follows:

(b) An employer shall report such injuries to the Department of Labor and Industry by filing directly with the department on the form it prescribes a report of injury within forty-eight hours for every injury resulting in death, and mailing within seven days after the date of injury for all other injuries except those resulting in disability continuing less than the day, shift, or turn in which the injury was received. . . .

4. At trial, Doug testified that he was, in fact, slightly injured in a stockcar accident in May of 1989; however, he indicated that he sustained only a minor cut to his chin from his helmet strap during the incident. In fact, Doug recounted that his injuries were so minimal that he attended the company picnic held the next day.

offer to heart, as he declined to execute the release. Notwithstanding his refusal to waive his benefits, Doug did not file a formal claim with the Bureau of WC during this time period.

On June 17, 1992, Doug underwent surgery for the removal of a herniated cervical disk. Dr. Yonas Zegeye performed the surgery, and subsequently proffered her expert opinion that Doug's injury was the result of his lifting of heavy computer equipment while at work. Approximately a month thereafter, on July 16, 1992, Bruce called a meeting and requested that his son, Bruce Jr., Ted, Doug, and Doug's wife attend. The purpose of the meeting was to attempt to coerce Doug into signing the release of his WC benefits. Again, as noted by the Superior Court, Ted's testimony during the trial of this case described the meeting as follows: "[Bruce] gave Doug a paper and he said, 'Doug I want this signed;' and Doug responded, 'Uncle Bruce, I can't sign this paper.'" Thereafter, Bruce and Doug got into an argument which escalated to the point where Bruce told Doug, "get the 'f' out of the shop, you're fired," causing Doug and his wife to exit the meeting. Bruce then turned his attention to Ted telling him: "remember what I told you." Ted took this to mean that he was also fired because he had not convinced Doug to sign the release. Ted gathered his personal belongings and left Motor Sales the same day.

On July 27, 1992, Doug finally filed a claim petition seeking WC compensation benefits.[5] On September 13, 1992, Doug also filed a claim for unemployment compensation (UC) benefits with the Pennsylvania Department of Labor and Industry (DOL). The DOL asked Motor Sales to send information regarding Doug's termination from employment to permit evaluation of the UC claim. Motor Sales responded that Doug was on medical leave[6] and as of September, 1992, had neither resigned nor been terminated from employment.

5. During the proceedings pertinent to this appeal, the parties stipulated that Doug prevailed on his WC claim. Issues pertinent thereto are not implicated in the matter before us.

6. While the record does not specifically reflect the basis for the medical leave, the obvious inference is that it was the result of Doug's work-related herniated cervical disk surgery.

After reviewing the case, the DOL communicated its decision, by letter, finding that Doug reasonably believed he had been discharged during his verbal altercation with Bruce on July 16, 1992. Thus, Doug had not voluntarily terminated his employment. The DOL also determined that Doug's conduct prior to and during that incident did not constitute willful misconduct. Finally, the DOL determined that as of September 24, 1992, Doug's physician had released him only to engage in limited light duty work. On the basis of these premises, the DOL awarded Doug UC benefits.[7]

Doug's father, Ted, also sought UC benefits. As in Doug's case, the DOL requested that Motor Sales provide information regarding Ted's termination, and Motor Sales responded asserting that Ted had been terminated for willful misconduct. The DOL determined that Motor Sales had failed to provide sufficient information to support this assertion. Accordingly, it also awarded Ted UC benefits. Motor Sales appealed that decision, but eventually withdrew the appeal. Accordingly, Ted was paid UC benefits.

Notwithstanding Doug's receipt of WC and UC benefits and Ted's receipt of UC benefits, on January 27, 1993, Doug and Ted filed a joint civil complaint against Motor Sales averring wrongful discharge from their employment. Seven years later, on September 6, 2000,[8] the case went to trial. Doug proceeded upon the theory that he had been terminated for refusing to waive his WC benefits, in contravention of Pennsylvania law as articulated in Shick v. Shirey, 552 Pa. 590, 716 A.2d 1231 (1998). Ted proceeded on the theory that he had been terminated for refusing to coerce Doug into waiving such

7. While it is not germane to this appeal, it should be noted that Motor Sales appealed this determination. The record does not contain the history or eventual outcome of the appeal.

8. The record reflects that part of the seven year delay between the filing of the complaint and the start of trial was caused by the trial court's grant of Doug and Ted's petition for a stay pending our Court's resolution of Shick v. Shirey, 552 Pa. 590, 716 A.2d 1231 (1998), which will be discussed infra. Following our decision in Shick, Ted and Doug petitioned the trial court to vacate the stay. The court granted this petition on June 29, 1999. Thereafter, the court issued an order setting trial for September 5, 2000.

benefits, and that such a claim was cognizable as a logical corollary to *Shick*.

On September 11, 2000, a jury determined that Doug had not been wrongfully discharged, and, accordingly, entered a verdict in favor of Motor Sales and against Doug. The jury then determined that Motor Sales did terminate Ted because he refused to coerce Doug into waiving his workers' compensation claim. The jury awarded Ted compensatory damages totaling $192,000, but declined to award punitive damages. Motor Sales filed post-trial motions seeking remittitur and judgment *n.o.v.* The trial court denied those post-trial motions, and Motor Sales appealed to the Superior Court.

Before the Superior Court, Motor Sales argued, *inter alia*, that the trial court erred in permitting Ted, an at-will employee, to proceed on a claim for wrongful discharge based upon his refusal to interfere with a subordinate employee's pursuit of workers' compensation benefits. Motor Sales was well aware of our decision in *Shick*, where we determined that it violated Pennsylvania law to terminate an employee for seeking WC benefits, but, nevertheless, argued that such decision should not be extended to prohibit an employer from terminating a supervisory employee for refusing to attempt to dissuade a subordinate employee to not seek WC benefits.[9] The Superior Court rejected this contention, holding that our decision in *Shick* should be extended to prohibit Motor Sale's conduct in this case. It, therefore, affirmed the trial court, permitting the verdict against Motor Sales to stand.

Appellant filed a petition for allowance of appeal with this Court raising two issues for our review: (1) whether the Superior Court erred in creating a new exception to the at-will employment doctrine, and (2) whether the court erred in

9. The facts of this case are unusual in that a father was the supervisory employee threatened with retaliation if he failed to dissuade his son, a subordinate employee, from filing for workers' compensation benefits. While the parties' relationship makes the case more compelling, it does not limit its holding. The precedent established herein is obviously applicable whenever an employer seeks to compel a supervisory employee to thwart a subordinate employee's unquestioned right to WC benefits.

retroactively applying *Shick* to this matter. We granted allowance of appeal to consider these issues. We turn first to consideration of whether the Superior Court inappropriately established a new exception to the at-will employment doctrine.

The modern genesis of the exception to at-will employment implicated herein arose in this Court's decision in *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974). *Geary* involved a discharge based on an employee's report to his superiors concerning the unsafe nature of steel pipe being manufactured and sold by his company. Although, in *Geary,* we held that the employee did not state a cause of action for wrongful discharge, we did recognize that if a violation of a clear mandate of public policy results in the termination of an at-will employee, that employee would have a right of action for wrongful discharge. *Id.* at 180.

After *Geary,* public policy exceptions to the at-will employment doctrine have been adopted in very limited circumstances. Courts of this Commonwealth have permitted the following wrongful termination claims when public policy concerns have been implicated: *Kroen v. Bedway Security Agency,* 430 Pa.Super. 83, 633 A.2d 628 (1993) (holding that an employee was discharged for refusing to submit to a polygraph test); *Highhouse v. Avery Transportation,* 443 Pa.Super. 120, 660 A.2d 1374 (1995) (concluding that an employee was wrongfully discharged for filing of an UC claim); *Raykovitz v. K Mart Corp.,* 445 Pa.Super. 378, 665 A.2d 833 (1995)(same); and the case directly implicated herein *Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231 (1998) (holding that an employee was wrongfully terminated for filing a workers' compensation claim).

The Superior Court's opinion below discusses *Lins v. Children's Discovery Centers of America, Inc.*, 95 Wash.App. 486, 976 P.2d 168 (1999), a decision from the state of Washington confronting the identical issue presented by this case. Washington, like Pennsylvania, recognizes an employer's essential right to terminate an at-will employee, absent statutory, regulatory, or contractual protection or some overarching public

policy. However, the Washington legislature and its courts have been far less reluctant than Pennsylvania to create exceptions to the precept that an employer may fire an at-will employee for any reason. *See, Lins* at 171–172. This has necessitated the utilization by Washington courts of a four-prong test for determination of whether peculiar circumstances prohibit an employer from discharging an at-will employee.[10] *Id.*

■ As we continue to hold to Pennsylvania's traditional view that exceptions to at-will termination should be few and carefully sculpted so as to not erode an employer's inherent right to operate its business as it chooses, we believe it unnecessary to adopt specifically as Pennsylvania law the Washington test for weighing whether an employer's discharge of an employee runs afoul of protected public policy. Nevertheless, we note that the *Lins* court confronted the precise issue before us and, as the four-prong test used therein serves as a convenient analytical framework for disposition of this matter, we do employ it herein solely as an aid in deciding this case.

Our first inquiry is whether a clear public policy is implicated in Doug's termination by Motor Sales. In *Shick,* we held that an employee cannot be terminated for seeking WC benefits. Such decision would be a Pyrrhic victory for Doug and all other Pennsylvania employees, if it could be as easily circumvented as Motor Sales contends here. We believe it is self-evident that if public policy prohibits termination for seeking workers' compensation, it also prohibits termination for declining to compel a subordinate employee to not seek compensation. We, thus, have little difficulty in concluding

10. The *Lins* test inquires as to whether: (1) there is a clear public policy implicated by the employer's discharge; (2) if so, whether that public policy will be jeopardized absent protection of the activity leading to the discharge; (3) whether employers in general have an "overriding justification" for wanting to utilize such activity as a factor affecting a decision to discharge an employee; and (4) whether the peculiar employee's activity in the case under scrutiny was indeed a substantial factor in the employer's decision to discharge. *Lins* at 172.

that there is a clear public policy supporting the logical incremental extension of *Shick* to the facts of this case.

We next consider whether a policy prohibiting an employer's termination of a subordinate employee for seeking WC would be jeopardized unless we protect such employee's supervisor from an employer's demand that he coerce a subordinate employee into foregoing WC benefits or face termination. For the reasons just stated, we believe it clear that such supervisory employee requires our protection. Indeed, there is little doubt that the policy of protecting subordinate employees' rights to seek WC benefits will be well-nigh eliminated if employers can avoid the rule of *Shick* by pressuring and firing supervisors who do not or cannot coerce subordinate employees into foregoing their rights. Moreover, it would be equally repugnant for this Court to turn its back on such supervisors, who amount to innocent pawns in a conflict between employer and subordinate employee, and, nevertheless, would find themselves out of employment without cause or recourse absent this decision.

Third, we consider whether employers in general have an overriding justification for considering a supervisory employee's refusal to terminate a subordinate employee seeking WC benefits as a factor affecting the decision to discharge such supervisory employee. In the instant case, it appears from this record that Motor Sales has no justification, let alone one that overrides all, for terminating Ted because he refused to coerce Doug into foregoing his compensation benefits. Further, we agree with the Superior Court that an employer, such as Motor Sales, may not justify a supervisory employee's termination based on his or her refusal to perform a directive which is violative of public policy as enunciated in case law, such as the one at issue here.

Fourth and finally, we consider whether Ted's activity was a substantial factor in Motor Sales' decision to fire him. Initially, we note that the jury in this case entered its verdict through special interrogatories. It was asked: "Was the termination of plaintiff, Theodore C. Rothrock, due to the

filing or pursuit of claim for workers' compensation by plaintiff, Douglas Rothrock?" It answered: "Yes." After the close of the trial, Motor Sales requested, *inter alia*, judgment *n.o.v.* Accordingly, as we now review this case, in substance we are being asked to grant judgment *n.o.v.*, and accordingly we may consider only the evidence supportive of the verdict, providing the verdict winner with the benefit of any doubt. *Degenhardt v. Dillon Company*, 543 Pa. 146, 669 A.2d 946, 950 (1996); *Moure v. The Raeuchle*, 529 Pa. 394, 604 A.2d 1003, 1007 (1992). In accord with that standard of review, we, without hesitation, conclude that the jury was free to believe that upon learning of Doug's injury, Bruce told Ted to force Doug to sign documents waiving compensation, or face personal termination. At the July 16, 1992 meeting, when Doug refused to waive his benefits, Bruce first told Doug he was fired and threw him out of the business, and then immediately turned to Ted and said remember what I told you, alluding to his prior threat that if Doug did not waive benefits, Ted would be fired. Thus, we find it self-evident that Ted's refusal to dissuade Doug from pursuing benefits was not only a substantial factor in Motor Sales' decision to fire Ted, but was the only factor.

On the basis of all the above, we hold, as a necessary corollary to the policy established in *Shick, supra,* that a Pennsylvania employer may not seek to have a supervisory employee dissuade a subordinate employee from seeking WC benefits. If an employer does so, the supervisory employee shall have a cause of action for wrongful discharge from employment.

Before closing, we must consider whether the Superior Court erred in extending the rule of *Shick* to this case. Motor Sales accurately points out that *Shick* was decided in 1998, and that Ted was terminated in 1992. Accordingly, Motor Sales argues that retroactive application of the alleged new principles of law announced in *Shick* and its extension in this case would unfairly burden employers with the obligation of "predicting the future."

Contrary to Motor Sales' assertion, we do not believe that *Shick's* application to this case implicates retroactivity concerns. As noted earlier, trial in the instant case was actually stayed pending disposition of *Shick,* and accordingly the parties had the benefit of that decision during all but the pre-trial proceedings herein. In Pennsylvania, the general rule is that we apply the law in effect at the time of the appellate decision. *Blackwell v. Commonwealth, State Ethics Comm.,* 527 Pa. 172, 589 A.2d 1094, 1099 (1991), citing *Commonwealth v. Cabeza,* 503 Pa. 228, 469 A.2d 146 (1983). Thus, we adhere to the principle that "a party whose case is pending on direct appeal is entitled to the benefit of changes in the law which occurs before the judgment becomes final." *Commonwealth v. Brown,* 494 Pa. 380, 431 A.2d 905, 906–7 (1981). *See also Christy v. Cranberry Volunteer Ambulance Corp., Inc.,* 579 Pa. 404, 856 A.2d 43 (2004) (noting the general principal that changes in the law are to be applied to pending cases). Accordingly, it was fully appropriate for the Superior Court to have applied *Shick* and the extension of it to the facts of this case.

Based on the foregoing, the Superior Court's Opinion is affirmed in all respects.

Justice NEWMAN did not participate in the consideration or decision of this case.

Chief Justice CAPPY files a concurring opinion in which Messrs. Justice CASTILLE and NIGRO join.

Chief Justice CAPPY, Concurring.

I join in all but one facet of the majority opinion. First, the majority rejects the adoption of the *Lins* test on the basis that it is inconsistent with Pennsylvania's traditionally strong at-will doctrine, ostensibly because this test is susceptible to allowing exceptions to that doctrine. Then, in conflict with this rationale, the majority goes on to apply this very same test and ultimately to find an exception to our at-will doctrine. Unlike the majority, I would simply analyze this suggested exception to our at-will doctrine in accordance with our prior

case law and the public policy considerations expressed therein.[1]

Applying this case law, which firmly establishes the primacy of the at-will doctrine in our Commonwealth, but which recognizes limited exceptions in cases of a violation of clear mandates of public policy, I would agree with the majority that a claim for wrongful discharge arises when a supervisor is terminated after refusing to force a subordinate employee to waive workers' compensation benefits.

Messrs. Justice CASTILLE and NIGRO join this concurring opinion.

1. *See Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231, 1233–38 (1998); *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 559 A.2d 917, 918 (1989); *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346, 348 (1990); *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174, 180 (1974); *see also Amy M. Carlson, States Are Eroding At–Will Employment Doctrines: Will Pennsylvania Join the Crowd?* 42 Duq. L.Rev. 511, 516 (Spring 2004); *Kurt H. Decker, Pennsylvania's Whistleblower Law's Extension to Private Sector Employees: Has the Time Finally Come to Broaden Statutory Protection for All At–Will Employees?* 38 Duq. L.Rev. 723, 736–42 (Spring 2000).