Gerard GRIESBAUM, Appellant

v.

AVENTIS PHARMACEUTICALS.

No. 06–4569.

United States Court of Appeals, Third Circuit.

Argued Oct. 17, 2007.

Filed: Dec. 24, 2007.

---

Donald P. Russo (argued), Bethlehem, PA, for Appellant.

Michael L. Banks, Azeez Hayne (argued), Morgan, Lewis & Bockius, Philadelphia, PA, for Appellee.

BEFORE: FISHER, ALDISERT, and GREENBERG, Circuit Judges.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

## I.  INTRODUCTION

This matter comes on before the court on an employee's appeal from a summary judgment entered in favor of his employer in an employment termination action. The employer, Aventis Pharmaceuticals, employed appellant Gerard Griesbaum as a sales representative. In the course of his employment Griesbaum was in a serious automobile accident that caused him significant injuries which precluded him from working. Accordingly, he received statutory workers' compensation benefits and contractual short-term and long-term disability benefits pursuant to an insurance policy that Aventis provided. After Griesbaum had been on medical leave for a full year, Aventis terminated his employment, an action that it asserts it took pursuant to its written medical leave policy requiring an employee's termination "after 365 continuous calendar days of medical leave." Suppl. app. at 107.

Notwithstanding the circumstance that his discharge was in accordance with the precise terms of Aventis's medical leave policy, Griesbaum filed this suit alleging that it terminated his employment to retaliate against him by reason of his seeking and receiving the workers' compensation benefits. Moreover, he filed this action even though he had no direct evidence that Aventis had this motive for discharging him, and, indeed, never has had any such direct evidence. With respect to circumstantial evidence he contends that Aventis's proffered reason for terminating his employment, i.e., its application of its one-year medical leave policy, was pretextual because Aventis deviated from its procedures in applying the policy. Its most notable deviation was that it did not ensure that Griesbaum received a letter from it notifying him about his potential employment termination pursuant to the medical leave policy if he did not return to work. We unanimously conclude, however, that Griesbaum had prior notice of Aventis's employment termination policy, and, more

significantly, did not show that its failure to give him specific notice of its medical leave termination policy following his injury suggests that it had a retaliatory animus for terminating his employment. Moreover, Judge Fisher and Judge Aldisert are of the view that Griesbaum did not show that there was a causal connection between the filing of his workers' compensation claim and the termination of his employment and for this additional reason Griesbaum's case fails. Therefore, we will affirm the District Court's order of September 25, 2006, granting Aventis's motion for summary judgment.

## II.  FACTS AND PROCEDURAL HISTORY

Aventis [1] employed Griesbaum, who is about 60 years old, as an at-will sales representative in its Reading, Pennsylvania, territory. Prior to Aventis terminating his employment Griesbaum worked for it or for a predecessor for 28 years.

On August 14, 2001, in the course of his employment, Griesbaum was in an automobile accident causing him serious bodily injuries. Following the accident, he was unable to perform the essential functions of his position and, as a result, a workers' compensation claim was filed on his behalf.[2] In addition, Griesbaum received short-term and long-term disability benefits until February 2005 when Aventis's long-term disability insurance carrier de-

termined that he was no longer eligible for benefits. Griesbaum appealed from the termination of the long-term disability benefits and as of the time of the district court's September 25, 2006 order, that appeal still was pending. We do not know whether the appeal since has been resolved but we do know that Griesbaum has continued to assert that he was not able to return to his position with Aventis during his entire 365–day medical leave and for at least sometime thereafter.[3]

Griesbaum testified at a deposition that shortly after the accident he spoke with Aventis's Regional Director (John Coleman), National Vice President of Sales (Tim Shalbrack), and District Manager (Rose Rich), and that they all told him that his position with Aventis was secure. However, at Griesbaum's deposition he clarified that he does not remember if any of these individuals promised to hold open his position for any specified time, nor does he believe that they broke any promises they made to him. Furthermore, at a deposition Rich denied stating that Griesbaum's position was secure but testified that she told him that the most important thing was his health.

In any event, regardless of what Aventis's management previously told Griesbaum, in February 2002 Rich informed him that Aventis was going to fill his position because it needed a representative in his territory and Aventis's policy was to back

1.  In 2004, Aventis merged with Sanofi Synthelabo and now is called "sanofi-aventis." Appellee's br. at 1 n. 1. Nevertheless, for convenience, we will refer to the company as "Aventis."

2.  Griesbaum does not remember filing the claim himself with the state agency with jurisdiction over workers' compensation claims but he does indicate that he "pursued [his workers' compensation claim] simply by informing [Aventis's] Human Resources Department that [he had] incurred a work related injury." Appellant's br. at 17. While our

outcome in this case does not depend on the mechanics of how the claim was filed, we believe that it is likely that Aventis submitted the claim for him as it normally does when an employee is injured in the course of employment. There is, however, no direct evidence in the record that it did file the claim.

3.  A decision on the outcome of his appeal of the denial of the benefits will be immaterial to the issues here. We do not know whether Griesbaum at this time believes that his physical condition would permit him to return to his past employment at Aventis.

fill an employee's position if he was unable to return to work after six months of medical leave. Griesbaum stated at his deposition that he did not believe that Aventis filled his position for any other reason.

Sometime following August 14, 2002, more than one year after the accident, Barbara Chalmers, an Aventis human resources services coordinator, conducted a routine periodical audit of its employees on medical leave. In accordance with Aventis's Medical Leave of Absence Policy, which states that employees "will be terminated at the earlier of (1) the date medical leave is no longer approved by Health Services and he or she does not return to work or (2) after 365 continuous calendar days of medical leave," suppl. app. at 106, she marked all employees on medical leave for longer than 365 days as "terminated." Thus, Chalmers marked Griesbaum's employment as terminated as of August 14, 2002. According to Chalmers's affidavit of May 26, 2005, at the time she "recorded a termination of employment for Mr. Griesbaum, [she] did not know who he was, nor did [she] know that a worker's compensation claim had been filed on his behalf," and "[t]he only reason [she] recorded an employment termination for Mr. Griesbaum was because he had been on medical leave for longer than 365 days." *Id.* at 109.

Griesbaum, however, stated in an uncontradicted allegation that no one notified him that Aventis had terminated his employment until October 2002 when T. Rowe Price, his section 401(k) plan administrator

and life insurance provider, advised him of his post-termination options. This notification caused Griesbaum's workers' compensation attorney to make an inquiry with Aventis about what he believed to be the sudden and inexplicable termination of Griesbaum's employment. Aventis then produced a letter dated January 16, 2002, approximately five months after the accident, from Maureen Flinton, a disability nurse specialist for Aventis, to Griesbaum notifying him that Aventis would terminate his employment if he had "not returned to work, or been released to return to work, by the end of 12 consecutive months of medical leave," i.e., on August 14, 2002. App. at 24. Griesbaum claims that he did not receive the letter and there is evidence to support this assertion that we accept on this appeal. In this regard the record shows that the zip code for Griesbaum's address in Pottsville, Pennsylvania, is 17901–3317, but that Aventis addressed the letter to him with the inaccurate zip code of 17909–3317. Moreover, the letter misspells "Pottsville" as "Pottsvill." Even though there is no indication in the record that the post office returned the letter to Aventis as undelivered, we regard the letter as having been undelivered and decide this case on that basis.

On August 5, 2004, Griesbaum filed this action against Aventis in the District Court. He alleges that Aventis wrongfully discharged him contrary to Pennsylvania common law in violation of public policy because it terminated his employment in retaliation against him for seeking workers' compensation benefits.[4]

---

**4.** Griesbaum states in his brief that "[h]e also contends that his permanent disability was a motivating factor in his discharge." Appellant's br. at 4. But he did not make this allegation in the District Court, did not include it in his complaint, and does not expand

on the claim in his brief. Furthermore, in its answering brief Aventis asserts that Griesbaum "has never (1) filed a claim or charge under the ADA or state disability law, (2) claimed to be disabled under any such law, or (3) sought any accommodation under those

Ultimately, Aventis moved for summary judgment, and the District Court granted the motion on September 25, 2006. *Griesbaum v. Aventis Pharm.*, No. 3:CV–04–1726, 2006 WL 2796160 (M.D.Pa. Sept. 25, 2006). The court in its opinion implicitly acknowledged that under Pennsylvania common law an employer ordinarily may discharge an at-will employee with or without cause, but it recognized that the Pennsylvania Supreme Court has established an exception to the general rule in situations in which an employer terminates an employee's position in retaliation against him for filing a claim seeking workers' compensation benefits.[5] *See Rothrock v. Rothrock Motor Sales, Inc.*, 584 Pa. 297, 883 A.2d 511, 515 (2005); *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231, 1232 (1998).[6] The District Court then analyzed the claim under the familiar burden-shifting framework that we regularly apply in Title VII retaliation cases [7] and made the alternative findings that (a) Griesbaum did not sustain his initial burden of establishing a prima facie case of retaliation as he did not produce any evidence of a causal connection between the filing of his workers' compensa-

laws." Appellee's br. at 2 n. 2. Griesbaum has not filed a reply brief challenging this assertion and did not challenge it at the oral argument on this appeal. Accordingly, this allegation is not properly before us and we will not address it. We also point out that Griesbaum does not challenge Aventis's medical leave termination policy as discriminatory on its face. We therefore are satisfied that the only claim before us is Griesbaum's Pennsylvania common law contention that Aventis terminated his employment in retaliation for seeking workers' compensation benefits.

5. The parties agree that Pennsylvania law is applicable here.

6. In *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 614–17 (3d Cir.1992), we discussed the public policy exception more fully. Of course, the Pennsylvania Supreme Court decided *Rothrock* after we decided *Borse*.

7. The District Court discussed how the Pennsylvania Supreme Court in *Rothrock*, 883 A.2d at 516–17, utilized as a "a convenient analytical framework" a four-prong test an intermediate appellate court in the State of Washington developed in *Lins v. Children's Discovery Ctrs. of Am., Inc.*, 95 Wash.App. 486, 976 P.2d 168, 172 (1999), in determining whether public policy prohibits an employer from discharging an at-will employee. But the Pennsylvania Supreme Court refused to adopt Washington substantive law with respect to limitations on an employer's right to discharge an at-will employee as "the Washington legislature and its courts have been far less reluctant than Pennsylvania to create exceptions to the precept that an employer may

fire an at-will employee for any reason." *Griesbaum*, 2006 WL 2796160, at *3 (quoting *Rothrock*, 883 A.2d at 515–16). Under the four-prong Washington test, the court inquires (1) whether a clear public policy exists, (2) whether the policy will be jeopardized absent protection of the activity in issue, (3) whether employers in general have an "overriding justification" for wanting to use the activity in issue as a factor affecting the decision to discharge, and (4) whether the particular employee's activity in the case was a "substantial factor" in the employer's decision to discharge the employee. *Lins*, 976 P.2d at 172. In Pennsylvania a court applies the four-prong test procedurally but not substantively.

The District Court, "[a]bsent clear direction from Pennsylvania courts to the contrary," also applied the burden-shifting framework regularly employed in Title VII retaliation cases, as the District Court had done in other workers' compensation retaliation cases, and, as it pointed out that we have done in two nonprecedential opinions. *Griesbaum*, 2006 WL 2796160, at *3. Significantly, both parties have framed their arguments within this burden-shifting framework.

On the appeal, Griesbaum does not argue that the District Court employed the wrong methodology, but rather argues that it reached the wrong decision in applying the burden-shifting framework. On the other hand, Aventis contends that using the burden shifting framework the District Court reached the correct result. Accordingly, we will apply the same burden-shifting framework on this appeal but will do so without determining that the framework should be used.

tion claim and the termination of his employment, and (b) even if Griesbaum did establish a prima facie case, he failed to produce any evidence that Aventis's proffered legitimate reason for terminating his employment, i.e., the routine application of its medical leave policy, was a pretext for retaliation. *Griesbaum*, 2006 WL 2796160, at *3–6.

Aventis recognized that Griesbaum established the first two elements of a prima facie case, i.e., his pursuit of workers' compensation benefits was a protected activity and the termination of his employment was an adverse employment action.[8] But the District Court found that the one-year span between these events was not "unusually suggestive," and found that there was no other evidence suggesting that Aventis had a retaliatory motive for terminating Griesbaum's employment. *Id.* at *3–4. For example, the court noted that there was no evidence that Aventis was hostile to Griesbaum because of his workers' compensation claim or discouraged him from filing the claim, and, in fact, "it appears that Aventis filed [his] . . . claim for him." *Id.* at *4. Importantly, the court recognized that at the time Chalmers terminated Griesbaum's employment as a result of her audit of the status of employees on medical leave, she did not know who Griesbaum was or know that he had a workers' compensation claim against Aventis.

The District Court found that Griesbaum's attempted rebuttal of Aventis's purported nonretaliatory reason for terminating his employment did not include any evidence that demonstrated that the reason was pretextual. In particular, the court found that there was no evidence "to suggest that the policy was not uniformly applied, or that employees who eschewed worker's compensation claims were retained after a twelve–month absence from work." *Id.* at *5. The court rejected Griesbaum's argument that the alleged lack of notice of the termination of his employment satisfied his burden as it believed that "[t]his fact is immaterial," as "[w]hat is significant is that Aventis had a policy of terminating employees who did not return to work after 12 consecutive months of medical leave" and "there is no evidence that Aventis deviated from its policy when it terminated Mr. Griesbaum." *Id.* at *6.

Following the entry of the judgment against him Griesbaum appealed, raising the following issues:

1. Whether or not the [District] Court erred in not taking into account the fact that [Aventis] did not follow its own policy with respect to [Griesbaum's] termination.

2. Whether or not the [District] Court erred by not properly applying the Supreme Court's test for retaliation as set forth in the decision of *Burlington Northern & Santa Fe Railway Co. v. White*, [548 U.S. 53] 126 S.Ct. 2405, 2515 [2415] [165 L.Ed.2d 345] (2006).

Appellant's br. at 2.

### III. JURISDICTION AND STANDARD OF REVIEW

The District Court had diversity of citizenship jurisdiction under 28 U.S.C. § 1332 and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the order granting summary judgment, and will affirm that order if our review reveals that "there is no genuine

---

8. In this case we are not concerned with a retaliatory act other than an adverse employment action. Thus, while we write the opinion continuously mentioning an adverse employment action, we are not implying that a retaliatory action of a different nature could not be actionable.

issue of material fact and that the moving party is entitled to judgment as a matter [of] law." *Elliott & Frantz, Inc. v. Ingersoll–Rand Co.,* 457 F.3d 312, 318 (3d Cir. 2006) (quoting Fed.R.Civ.P. 56(c)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit, and an issue is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Moreover, a party will not be able to withstand a motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." *In re Ikon Office Solutions, Inc.,* 277 F.3d 658, 666 (3d Cir.2002) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). We review the facts in the light most favorable to the non-moving party, i.e., the party against whom summary judgment was sought and entered. *See Elliott & Frantz,* 457 F.3d at 318.

As we indicated above, we are reviewing this case under a burden-shifting framework. This framework had its origins in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this methodology to establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in a protected employee activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *See, e.g., Fasold v. Justice,* 409 F.3d 178, 188

(3d Cir.2005); *Nelson v. Upsala Coll.,* 51 F.3d 383, 386 (3d Cir.1995). If a plaintiff successfully establishes a prima facie case, the burden of production of evidence shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *See, e.g., Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500–01 (3d Cir.1997); *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994). If the defendant satisfies this requirement, the burden of production returns to the plaintiff, who must show by a preponderance of the evidence that the employer's articulated reason for the adverse employment action is a pretext for a retaliatory motive, i.e., he must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions." *Fuentes,* 32 F.3d at 764.

## IV. DISCUSSION

### A. *Aventis's Employment Termination Policies*

Griesbaum contends that the District Court erred by failing to take into account the circumstance that Aventis did not follow its own procedural employment termination policies in the course of its termination of his employment.[9] Specifically, he states:

> [Aventis] did not follow its own in-house policies with regard to terminating an employee, and terminated [him] in a peremptory fashion. A jury could readily conclude that there is no other credible explanation for [his termination] oth-

---

9. Griesbaum does not characterize the policies as "procedural" but that is what they are. The substantive policy was to discharge an employee after he was on medical leave for

365 consecutive calendar days and Griesbaum does not contend that Aventis did not do precisely that.

er than a desire to get rid of him due to his having filed a worker's compensation petition arising from his injuries in the auto accident.

The District Court ... minimiz[ed] the importance of the fact that [Aventis] never even bothered to see to it that [he] had received a written notice of his termination. He was afforded no exit interview, and not provided with prior notice of his termination. Moreover, [Aventis] has specific written procedures for terminating an employee, none of which were followed in this case.

Appellant's br. at 8. He further alleges that Aventis generally sends employment termination letters by certified mail but it did not send the January 16, 2002 letter to him in that way, and that Aventis usually communicates information to the employee regarding the disability eligibility process over the telephone but did not do so here.

Griesbaum believes that Aventis's failure to follow its employment termination policies, in conjunction with verbal assurances from Aventis management that his position was secure, "supports the idea that [he] was terminated for filing a worker's compensation claim," *id.* at 9, and "[c]learly ... gives rise to a jury question regarding motivations," *id.* at 11. Griesbaum argues that Aventis's failure to follow its procedural employment termination policies constitutes sufficient evidence to overcome

Aventis's motion for summary judgment as it both (a) establishes a causal connection between the filing of the compensation claim and his employment termination, and (b) establishes that "the purported reason for [Aventis's] discharge of [him] was actually pretext for retaliatory discharge based on [his] filing for workers' compensation benefits." *Id.* at 20.[10]

The District Court was not convinced by this argument, either as it applied to Griesbaum's prima facie case or with respect to proving pretext. With respect to the prima facie case, the District Court indicated that it was "troubling that Aventis cannot present stronger evidence that it did in fact notify Mr. Griesbaum of his termination" but that "[t]he lack of notification, though, does not present sufficient evidence that Mr. Griesbaum's termination was *connected* to his pursuit of worker's compensation benefits." *Griesbaum,* 2006 WL 2796160, at *4 n. 12.

(1.) *Was there a causal connection between Griesbaum's workers' compensation claim and the termination of his employment?*

Judge Greenberg is hesitant to reach the same conclusion as the District Court with respect to Griesbaum's prima facie case predicated on Aventis's deviation from its employment termination procedures. He points out that "[t]o establish

---

**10.** Griesbaum makes several other related arguments but we reject them as we conclude that they are not meritorious. First, he argues that "there is a question of fact as to when and who made the decision to terminate [him]." Appellant's br. at 9. But this is not the case as the only evidence in the record on this point is that Chalmers terminated his employment effective August 14, 2002, in accordance with Aventis's medical leave policy. Griesbaum does not set forth any evidence to rebut this evidence. Rather, he relies on mere speculation which, absent specific facts or reasonable inferences, is simply not enough to overcome a motion for summary

judgment. In fact, Griesbaum testified at his deposition that he does not know who made the decision to terminate his employment.

Second, he speculates that Maureen Flinton, the disability nurse specialist, may have known that he was receiving workers' compensation benefits. But even if this speculation is correct, the fact that she was aware of his compensation claim would not support Griesbaum's case as it is undisputed that Chalmers made the ultimate decision to terminate his employment pursuant to her uniform application of Aventis's medical leave policy. Thus, the fact claimed to be in dispute is not material.

the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. De-Flaminis,* 480 F.3d 259, 267 (3d Cir.2007). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Id. (quoting Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 281 (3d Cir.2000)).

It is true that Aventis terminated Griesbaum's employment approximately one year after he began receiving workers' compensation benefits and thus the interval between the two events was not "unusually suggestive." Nevertheless, Judge Greenberg concludes, after reviewing the facts in the light most favorable to Griesbaum, that he has supplied facts that could establish, in the language we used in *Lauren W.,* that there was "a pattern of antagonism coupled with timing to establish a causal link." After all, Griesbaum sought or there was sought for him workers' compensation benefits in or shortly after August 2001 and Aventis's management gave what reasonably could be understood to be false assurances that his position was secure soon after the accident. Moreover,

there is no doubt that Aventis incorrectly addressed the January 16, 2002 letter notifying him about his eligibility for disability benefits and his potential termination and that Griesbaum did not receive the letter.[11] Furthermore, Aventis did not follow its general policy to communicate information over the telephone to an employee with respect to the disability eligibility process and did not notify him when it filled his position in February 2002.

■ Judge Greenberg also believes it is significant on a summary judgment motion that when Aventis terminated his employment around August 2002 it did not notify him of the action, and that Griesbaum did not receive notice that Aventis had terminated his employment until October 2002. Even at that time Griesbaum's section 401(k) plan administrator and life insurance provider rather than Aventis notified him of the termination of his employment. In these circumstances, though Judge Greenberg recognizes that he may be generous to Griesbaum in doing so, he believes, in reviewing the facts in the light most favorable to him, that there is enough evidence to support a conclusion that Griesbaum has demonstrated a "pattern of antagonism" that connects his pursuit of workers' compensation benefits to the termination of his employment, and thus, he has established a prima facie case.[12]

---

11. It must be said that it is difficult to conceive that Aventis purposefully misdirected the letter with the intention that Griesbaum not receive it. There seems to be no doubt but that it was simple negligence that caused the error.

12. Judge Fisher and Judge Aldisert do not join in Part IV(A)(1) of this opinion because they agree with the District Court that Griesbaum did not offer sufficient evidence to support a causal connection between his workers' compensation claim and termination in order to establish a prima facie case. On the other hand Judge Greenberg believes that Griesbaum has offered sufficient evidence of a causal link by showing a "pattern of antago-

nism coupled with timing." Op. at 16 (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir.2007)). In support of this view Judge Greenberg points to four pieces of evidence: (1) assurances by Aventis management to Griesbaum regarding his continued employment, (2) the incorrect addressing of a letter to him, (3) failure to communicate information about the disability eligibility process with him over the telephone, and (4) failure to notify him of his termination.

Judge Fisher and Judge Aldisert find such evidence insufficient to establish the requisite pattern of antagonism. *Compare with Woodson v. Scott Paper Co.,* 109 F.3d 913 (3d Cir.1997) (finding a pattern of antagonism

(2.) *Was there a basis to conclude that Aventis's proffered reason for terminating Griesbaum's employment was pretextual?*

■ Even if we found that there was a causal connection between the workers' compensation claim and the employment termination the finding would not matter if we should conclude that Aventis has articulated a legitimate, nondiscriminatory reason for terminating Griesbaum's employment and there is insufficient evidence in the record from which a jury could conclude that this proffered reason was a pretext for illegal retaliation. Because we unanimously do reach these conclusions, for this reason we will affirm the District Court's order granting Aventis's motion for summary judgment.

With respect to the second step of the burden-shifting framework at the summary judgment stage, it is clear that Aventis's application of its 365–day limit on medical leave was a legitimate, nondiscriminatory reason for terminating Griesbaum's employment. Consequently, we move to the third step of the burden-shifting framework at which time a "court focuses on whether there is sufficient evidence from which a jury could conclude that the purported reasons for defendant's adverse employment actions were in actuality a pretext for [retaliation]." *Shaner v. Synthes (USA)*, 204 F.3d 494, 501 (3d Cir. 2000) (internal quotation marks and citation omitted). Thus, to defeat a motion for summary judgment, a plaintiff must point "to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (internal quotation marks and citation omitted); *see also Sheridan v. E.I.*

---

where, between the time of filing a complaint of racial discrimination with the EEOC and his termination, an African–American manager was placed in charge of the smallest, worst performing division of the company, faced "suggestions" from supervisors to drop his EEOC complaints, was denied requested resources to effectively manage the division, received poor work evaluations, and racially derogatory graffiti appeared in a restroom).

Judge Fisher and Judge Aldisert believe:

(1) Management's well-wishes and assurances are of little, if any, value to a determination of antagonism because they are not themselves hostile and were made substantially before management was aware of the extreme length of Griesbaum's absence.

(2) Aventis' failure to correctly address the letter to Griesbaum notifying him of his potential termination similarly provides little evidence of antagonism. Judge Greenberg admits as much when he asserts that he has "no doubt but that it was simple negligence that caused the error." Op. at 17 n. 11. Judge Greenberg's refusal to believe Aventis "purposefully misdirected the letter" argues against using such misdirection as evidence of antagonism. *Id.*

(3) Aventis' failure to communicate with Griesbaum over the telephone and failure to notify him of his termination provide little evidence of antagonism. The Medical Leave Policy was made available to Griesbaum and there is evidence that Aventis attempted to send a letter to Griesbaum informing him of his status with respect to that policy. In addition, failure to notify Griesbaum of his termination would appear to fall outside the relevant time period for determining a pattern of antagonism. *See Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 302 (3d Cir.2007) ("[C]ourts may look to the intervening period[, between the protected activity and the adverse action,] for demonstrative proof.").

(4) It appears somewhat inconsistent for Judge Greenberg to conclude that, although such evidence demonstrates a "pattern of antagonism," it does *not* demonstrate "weakness, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered legitimate reason for its termination of Griesbaum's employment. Op. at 22.

*DuPont de Nemours & Co.,* 100 F.3d 1061, 1067 (3d Cir.1996) (en banc).

Griesbaum cannot satisfy this burden as his point that Aventis deviated from its employment termination procedures is immaterial with respect to the issue before us. The undisputed evidence establishes that Aventis, through Chalmers, terminated Griesbaum's employment consistently with its uniformly-applied medical leave policy.[13] Indeed, this case is remarkable in that the employer is being accused of wrongful conduct because it followed its substantive uniform policy in terminating an employee's position. Usually in adverse employment action cases the employee makes the opposite contention, i.e., that the employer did not follow its own policies in taking the action. We do not go so far as to suggest that there is a bright line safe harbor rule that an adverse employment action undertaken by an employer pursuant to a uniformly applied clearly delineated rule never can be regarded as having been taken on a pretextual basis as we have no need to consider that possibility. Yet we recognize that it might be an appropriate rule for a court to follow.

It is notable that Chalmers did not even know that Griesbaum filed a workers' compensation claim and that there is no evidence that persons within Aventis that knew. of his claim exerted any influence on her decision to terminate his employment.[14] Significantly, Griesbaum admitted at his deposition that he does not know of any reason other than Aventis's medical leave policy that caused it to terminate his employment, and he indicated in his long-term disability "Resource Questionnaire" dated February 19, 2004, completed in support of his disability claim with Brookspire Services, Inc., the claims administra-

tor, that Aventis fired him "for being on disability for 12 plus months." Supp. app. at 86. Thus, when it was in Griesbaum's interest to assert that Aventis terminated his employment because of its medical leave termination policy he was willing to do so.

Accordingly, Griesbaum's assertion with respect to Aventis's deviation from its employment termination procedures is immaterial as the deviations, particularly its failure to give notice in January 2002 of the 365–day limitation on medical leave and its failure in August 2002 to give him notice of the actual termination of his employment, do not demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions," *Fuentes,* 32 F.3d at 765, in Aventis's proffered legitimate reason for terminating Griesbaum's employment. Clearly, what is important here is Aventis's motivation, not Griesbaum's awareness or unawareness of Aventis's medical leave employment termination policy or, indeed, his awareness or unawareness of the actual termination of his employment. In the end, Griesbaum sets forth no evidence that could support a conclusion that Aventis had a retaliatory motive for terminating his employment.

We recognize that Griesbaum contends that there is a genuine issue of material fact as to "what information was given to [him] regarding the medical leave of absence policy." Appellant's br. at 21. Yet reviewing the facts in the light most favorable to him, as we are required to do at this stage of the litigation, the fact that he did not receive the January 16, 2002 letter informing him regarding the potential termination of his employment makes no difference. Lisa Lucifero, an Aventis senior human resources generalist, stated in her

---

13. Griesbaum in his brief does not contend that in other cases Aventis deviated from its 365–day termination policy.

14. But even if she knew our result would be the same. After all, Griesbaum was on medical leave for more than 365 continuous calendar days.

affidavit dated May 26, 2005, that "[f]rom at least 2001 through the present, Aventis has distributed [the leave policy] to its employees in a Policy Manual and has made [it] available to its employees on the [internet]." Suppl. app. at 104. Griesbaum admitted at his deposition that he received the manual distributed to him at some point before the accident and he kept a copy of it. *Id.* at 45. He, however, could not recall if he ever read the policy. *Id.* at 50. The manual also was available to him on the internet, although Griesbaum testified that he was not aware that the policies were available there. *Id.* at 46. Thus, whether or not Griesbaum was aware of them the policies were not a secret.

Therefore, whether or not Griesbaum actually received the January 16, 2002 letter, Aventis's failure to send him the letter, at least in a way that he would receive it, is inconsequential in a factual sense within the context of this case as Aventis provided ample notice of its policy through at least two other means. Griesbaum's choice to ignore the notice provided to him does not shift the blame to Aventis. But even by shifting the blame to Aventis for Griesbaum's lack of knowledge of the 365–day limitation on medical leave we would not change our result as we have no basis to conclude that its explanation for terminating Griesbaum's employment was a pretext for a retaliatory act.

### B. *Burlington Northern & Santa Fe Railway Co. v. White*

Griesbaum contends that the District Court improperly disregarded the Supreme Court's decision in *Burlington Northern & Sante Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), which he argues sets

forth "a more stringent analysis of retaliation claims" and must be applied "even in state law cases such as this one." Appellants' br. at 8. Griesbaum argues that retaliation claims are broader than discrimination claims in that discrimination claims are "limited to discrimination actions that affect the terms and conditions of employment," while retaliation claims extend to situations where the alleged retaliatory actions are "materially adverse" to the employee, i.e., they "well might have dissuaded a reasonable worker from [participating in the protected activity]." Appellant's br. at 22 (quoting *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir.2006); *Burlington Northern*, 126 S.Ct. at 2415).

Though Griesbaum may set forth the law accurately, the holding in *Burlington Northern* is not germane in this case.[15] *Burlington Northern* dealt with what conduct is actionable under the Title VII protections against retaliation. But Aventis does not deny that its termination of Griesbaum's employment was an "adverse employment action" and undoubtedly if he had linked the termination to his receipt of workers' compensation benefits his case would have survived Aventis's motion for summary judgment. *See Griesbaum*, 2006 WL 2796160, at *3 n. 9 ("Aventis admits that Mr. Griesbaum has established [that] ... he suffered an adverse employment action when Aventis terminated his employment."). After all, it is hard to understand how any employment action could be more adverse than a termination of the employment. Yet the issue before us is whether Griesbaum produced sufficient evidence to establish that Aventis had a retaliatory motive for the termination to overcome its motion for summary judgment and inasmuch as *Burlington North-*

---

**15.** As we already have indicated this case involves an adverse employment action, *see supra* note 8, and thus we are not concerned

with what other types of conduct could be actionable under Pennsylvania law in a workers' compensation retaliation case.

*ern* has no bearing on an issue of that nature it is not germane here.

## V. CONCLUSION

For the foregoing reasons the order of September 25, 2006, will be affirmed.