Leonard J. DAVENPORT, Appellant,

v.

Stephen R. REED, Mayor of City of Harrisburg; and Barbara A. Stevens, City of Harrisburg Deputy Director of Codes.

Commonwealth Court of Pennsylvania.

Argued June 7, 2001.

Decided Oct. 26, 2001.

Keith E. Kendall, Harrisburg, for appellant.

James D. Young, Harrisburg, for appellees.

Before DOYLE, President Judge, FRIEDMAN, Judge, and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Leonard J. Davenport (Davenport) appeals from an order of the Court of Common Pleas of Dauphin County granting summary judgment in favor of Stephen R. Reed, the Mayor of the City of Harrisburg, and Barbara A. Stevens, the City of Harrisburg Deputy Director of Codes (collectively, the City), and against Davenport in the action filed by Davenport against the City challenging the termination of his employment. We affirm.

The relevant facts are undisputed in this matter. Davenport began his employment with the City on June 25, 1979 as a housing inspector in the Bureau of Codes Enforcement. Davenport was subsequently promoted to an assistant health officer and an assistant health officer III on June 1, 1987 and October 1, 1987, respectively.

On April 1, 1991, Davenport was then appointed to the City health officer, a management position. Due to his appointment to the management position, Davenport was no longer eligible to be a member of AFSCME, Local # 521, the collective bargaining unit representing all non-uniform, non-management employees of the City. On November 8, 1991, the Mayor notified Davenport that he had acquired a permanent status in the health officer position after serving a six-month probationary period.

Subsequently on June 2, 1993, Davenport was reprimanded for his off-duty conduct. Davenport was advised at that time that he would be subject to immediate dismissal upon any future infraction. On July 14, 1993, Davenport was suspended for five days without pay for violating the Standard Work Rules, including insubordination, use of profane and obscene language, and providing false information to his supervisor. In a letter dated July 14, 1993, the director of the Department of Building and Housing Development again warned Davenport that "any additional violations of the Standard Work Rules may result in an immediate termination." On January 31, 1994, Davenport was arrested and charged with simple assault and disorderly conduct after his daughter accused him of striking her during argument. The City terminated Davenport's employment on January 31, 1994 for violating the Standard Work Rules.

On July 18, 1994, Davenport commenced an action against the City challenging the termination of his employment. In the second amended complaint, Davenport alleged that by summarily discharging him without just cause and without a pre-termination hearing, the City violated the civil service provisions of The Third Class City Code (Code), Act of June 23, 1931, P.L. 942, *as amended*, 53 P.S. §§ 35101—

39701, and his constitutional right to procedural due process. Davenport sought (1) a writ of mandamus directing the City to reinstate his employment pending a due process hearing (Count I); (2) award of damages under 42 U.S.C. § 1983 (Count II); and (3) reinstatement of his employment and award of damages for wrongful termination of his employment (Count III).

The trial court initially denied the motions for summary judgment filed by the parties. Later, the trial court directed the parties to file supplemental motions for summary judgment addressing relevant legal issues. After considering the supplemental motions filed by the parties, the trial court granted the City's motion and entered summary judgment in favor of the City and against Davenport on all counts of the second amended complaint. Davenport then appealed the trial court's decision to the Superior Court, which transferred the appeal to this Court.

Davenport first contends that the trial court erred in granting the City's motion for summary judgment on Count I of his second amended complaint, in which he sought a writ of mandamus ordering the City to reinstate his employment and hold a due process hearing. In support, Davenport asserts that the City failed to afford him a pre-termination hearing as required by the civil service provisions of the Code. The City contends, on the other hand, that the civil service provisions are inapplicable to Davenport because he was not appointed to the health officer position in compliance with the Code.[1]

■ It is well established that mandamus is an extraordinary remedy which compels official performance of a ministerial act or a mandatory duty. *Pennsylvania*

*Dental Ass'n v. Insurance Department,* 512 Pa. 217, 516 A.2d 647 (1986). A writ of mandamus may be issued, only where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and lack of any other appropriate and adequate remedy. *Mickens–Thomas v. Board of Probation & Parole,* 699 A.2d 792 (Pa. Cmwlth.1997).

Article XLIV (Civil Service), Section 4401 of the Code, 53 P.S. § 39401, provides in relevant part:

No person or persons may be appointed to any position whatever. . . . . in the position of building inspector, or as health officers other than registered physicians, or as sanitary policemen or inspectors of the health department, without having first passed all the examinations hereinafter provided for, and having been appointed in the manner and according to the terms and provisions and conditions of this article.

Sections 4402 and 4404 of the Code, 53 P.S. §§ 39402 and 39404, provide that a civil service board, consisting of three citizens elected by a city council, must prepare and adopt rules and regulations regarding "the selection and appointment" of all persons subject to the civil service provisions of the Code, as "shall be best adapted to securing the best service for the public." Sections 4405 through 4408, 53 P.S. §§ 39405—39408, then set forth detailed procedures for appointment, suspension and discharge of civil service employees.

■ The purpose of the civil service provisions is to regulate and improve civil service in the cities of the Commonwealth by establishing a system whereby munici-

---

1. This Court's scope of review of the trial court's decision to grant or deny a motion for summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *City of York v. Schaefer Temporary Services, Inc.,* 667 A.2d 495 (Pa.Cmwlth.1995).

pal employees would be selected on the basis of their qualifications. *Snizaski v. Zaleski*, 410 Pa. 548, 189 A.2d 284 (1963). In order to insure and maintain high standards established by the civil service provisions, a civil service appointment must strictly comply with the requirements set forth in those provisions; substantial compliance is insufficient. *Detoro v. City of Pittston*, 344 Pa. 254, 25 A.2d 299 (1942).

 Consequently, permanency of tenure applies only to those who have been appointed in strict compliance with the civil service laws. *Id.* "It is a condition precedent to permanency that the conditions of the [civil service provisions] be followed, for otherwise the quality of public service would be impaired rather than promoted." *Id.* at 260, 25 A.2d at 302. To claim protections under the civil service provisions, the discharged employee must establish that he or she was properly appointed in strict compliance with the requirements set forth in those provisions. *Snizaski; Healey v. Jones*, 152 Pa.Super. 18, 30 A.2d 732 (1943).

 In this matter, the City did not adopt rules or regulations implementing the civil service provisions of the Code until after the termination of Davenport's employment in January 1994. As a result, Davenport was never asked or required to take civil service examinations mandated by Section 4401 of the Code during his employment. Since Davenport was not appointed to the health officer position in strict compliance with the requirements

set forth in the civil service provisions of the Code, he never acquired the civil service status.[2] Therefore, the procedural protection afforded by the Code to civil service employees do not apply to Davenport.[3] Since Davenport failed to establish a clear right to the relief sought in his action in mandamus, the trial court properly granted the City's motion for summary judgment as to Count I of the second amended complaint.

Davenport next contends that he stated a valid cause of action under 42 U.S.C. § 1983 by alleging that the City violated his right to procedural due process under the Fourteenth Amendment to the United States Constitution, U.S. CONST. amend. XIV.

 The procedural due process applies only to deprivation of a property interest or a liberty interest protected by the Fourteenth Amendment. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). To have a property interest protected by procedural due process, one must have a legitimate claim of entitlement to it. *Id.* The state law governs a determination of whether one has a property interest in continued employment. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In Pennsylvania, "[t]enure in public employment, in the sense of having a claim to employment which precludes dismissal on a summary basis, is, where it exists, a matter of legislative grace." *Scott v. Philadelphia Parking Authority*, 402

---

**2.** Davenport was appointed to the health officer position by the Mayor. Under Sections 2301 and 2305 of the Code, added by Section 23 of the Act of June 28, 1951, P.L. 662, 53 P.S. §§ 37301 and 37305, however, a health officer must be appointed by the board of health or the city council, not by the Mayor.

**3.** Conceding that his appointment to the health officer position was not made in strict

compliance with the civil service provisions of the Code, Davenport urges this Court to reexamine the "arcane" rule requiring strict compliance with the civil service law. Davenport's Brief, p. 10. We do not find, however, any compelling reason for abandoning the long-standing, well-established rule adopted to promote the purpose of the civil service system.

Pa. 151, 154, 166 A.2d 278, 281 (1960). Thus, public employees in Pennsylvania are employees-at-will subject to summary dismissal for a good reason, a bad reason or no reason at all, unless the legislature explicitly confers tenure as an integral part of a comprehensive governmental employment scheme. *Stumpp v. Stroudsburg Municipal Authority*, 540 Pa. 391, 658 A.2d 333 (1995); *American Federation of State, County & Municipal Employees v. Shapp*, 443 Pa. 527, 280 A.2d 375 (1971); *Bolduc v. Board of Supervisors of Lower Paxton Township*, 152 Pa.Cmwlth. 248, 618 A.2d 1188 (1992), *appeal denied*, 533 Pa. 662, 625 A.2d 1195 (1993).[4]

▆▆▆▆ We have already concluded that the procedural protection provided in the civil service provisions of the Code are inapplicable to Davenport because he was not appointed in strict compliance with the requirements of those provisions. In addition, Davenport was no longer subject to the terms of the collective bargaining agreement following his appointment to the management position of the City health officer. Therefore, Davenport did not have reasonable expectation of continued employment in the health officer position. Rather, he was an at-will employee subject to summary dismissal and did not have a property interest protected by the Fourteenth Amendment. Nor does his allegation that his reputation was impaired by the termination of his employment implicate in any way a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396 (3rd Cir.2000), *cert. denied*, 531 U.S. 1011, 121 S.Ct. 566,

148 L.Ed.2d 485 (2000). Since Davenport had neither a property interest nor a liberty interest protected by the Fourteenth Amendment, he failed to state a valid cause of action under 42 U.S.C. § 1983.

Finally, Davenport contends that he stated a valid cause of action for wrongful termination of his employment without just cause.

▆▆▆▆ As a general rule, a common-law cause of action for wrongful termination is not recognized in Pennsylvania for an at-will employee. *Paul v. Lankenau Hospital*, 524 Pa. 90, 569 A.2d 346 (1990). An exception to this general rule has been recognized in the very limited circumstances, where allowing an employer to discharge an at-will employee would threaten a clear public policy. *See, e.g., Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (1998) (the termination for filing a claim for workers' compensation benefits); *Raykovitz v. K Mart Corp.*, 445 Pa.Super. 378, 665 A.2d 833 (1995) (the termination in retaliation for seeking unemployment benefits); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (the termination for missing work for jury duty); *Perks v. Firestone Tire & Rubber Co.*, 611 F.2d 1363 (3rd Cir.1979) (the termination for refusing to take a polygraph test).

▆▆▆▆ To justify the application of the public policy exception, the employee must point to a clear public policy articulated in the constitution, statutes, regulations or judicial decisions directly applicable to the facts in the case; it is not sufficient that the employer's action toward the employee is unfair. *Hunger v.*

4. Examples of legislation which explicitly confers tenure to public employees are, in addition to the Code, the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§ 741.1—741.1002; the Public Employe Relations Act, Act of July 23, 1970, P.L. 563 *as amended*, 45 P.S. §§ 1101.101—1101.2301; and the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702.

*Grand Central Sanitation,* 447 Pa.Super. 575, 670 A.2d 173 (1996), *appeal denied,* 545 Pa. 664, 681 A.2d 178 (1996). Even when an important public policy is involved, the employer may still discharge the at-will employee, if the employer has a separate, plausible and legitimate reason for the discharge. *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974).

Without citing any authority, Davenport argues that the public policy exception should apply in this matter because the City violated Section 2351 of the Code, 53 P.S. § 37336, which requires the city council to follow the recommendations of the board of health as to appointment and removal of the public health employees, and because the City's action summarily discharging him left the City without a health officer, thereby temporarily affecting the public health.

 Davenport's reliance on Section 2351 related to the removal of the civil service employees are inapposite.[5] As we have already concluded, he was not appointed to the health officer position in strict compliance with the civil service requirements and therefore was not subject to the civil service provisions. As the Pennsylvania Supreme Court stated:

> The legislature has declared in unmistakable terms that merit ascertained in a manner prescribed shall govern appointments ... and has formulated and announced the public policy of the state in that respect. An administrative officer is not permitted to violate such declared policy and no court may sanction its violation. An employment which in its inception violates such an act as this is illegal and against public policy and it is the duty of the administrative officers

of the state or its civil subdivisions to discontinue any illegal employment when they note its illegality. The illegality should not go unchallenged. In such a case the defense is not waived by the action of the representatives of the municipality.

*Detoro,* 344 Pa. at 260–61, 25 A.2d at 303.

Thus, to apply the public policy exception based on the City's failure to implement the civil service provisions of the Code and allow Davenport to pursue an action for wrongful termination would directly contravene the public policy announced by the legislature in enacting the civil service provisions of the Code, i.e., securing the best service for the public. Further, Davenport fails to point to any authority prohibiting the City from discharging an at-will employee for disciplinary reasons unless it finds a replacement.

 Moreover, Davenport does not dispute that he was previously disciplined and warned by the City that any further infraction would result in immediate dismissal. Consequently, even assuming, *arguendo,* that Davenport has demonstrated that the City violated a clear public policy in discharging him, the City still had a separate, plausible and legitimate reason to discharge him, thereby preventing the application of the public policy exception.

Accordingly, the order of the trial court granting the City's motion for summary judgment on all counts of Davenport's second amended complaint is affirmed.

### ORDER

AND NOW, this 26th day of October, 2001, the order of the Court of Common

---

**5.** We also note that Section 2351, relied on by Davenport, further provides that "[s]uch appointees shall be required to pass any civil service examination required by any civil service commission lawfully established in such city."

Pleas of Dauphin County in the above-captioned matter is affirmed.