**Madziva v. Philadelphia Hous. Auth.**

*Amber M. Racine, Daniel Bencivenga* and *Harold Goodman,* for plaintiff.

*Robin Amanda Yudkovitz* and *Andrew Kenis,* for defendant.

NEW, *J.,* September 3, 2013—Plaintiff Simbarashe Madziva has appealed the order of this court dated June 6, 2013, sustaining the Philadelphia Housing Authority's preliminary objections and dismissing plaintiff's complaint. For the reasons discussed herein, this court respectfully requests the order be affirmed on appeal.

## PROCEDURAL AND FACTUAL HISTORY

Plaintiff Simbarashe Madziva (hereinafter "plaintiff") commenced this employment/wrongful discharge action against defendant Philadelphia Housing Authority (hereinafter "defendant" or "PHA") by way of complaint on February 25, 2013, alleging violations of his constitutional right to self-defense and substantive and procedural due process rights. The underlying facts of this litigation are as follows.

Plaintiff was hired by defendant as an asset property manager in January, 2009. In connection with this position, plaintiff oversaw the management of more than 300 housing units and assisted PHA residents in obtaining housing unit transfers. On August 29, 2011, a resident came to defendant's Philadelphia office and demanded a housing transfer. When plaintiff requested the resident to calm down, the resident allegedly grabbed plaintiff around the waist, digging her nails into his side. The resident's son also is alleged to have struck plaintiff at this time. In response to the attack, plaintiff freed himself. The resident and her son were removed from the office by a PHA trainee, but returned shortly thereafter with officers from the Philadelphia Police Department. Plaintiff declined to press charges against the resident and was later informed, based upon the police investigation and report, he was not charged with any misconduct.

On October 5, 2011, approximately six (6) weeks after the incident, defendant suspended plaintiff without pay for ten (10) days and recommended his employment be terminated for fighting in violation of PHA's Human

Resource Manual under which fighting is a Class IV Major Infraction, which warrants termination regardless of whether the employee was the aggressor or was acting in self-defense.

Plaintiff requested a hearing to challenge the disciplinary actions imposed against him. defendant did not respond to plaintiff's request. After the ten-day suspension, defendant did not reinstate plaintiff and did not pay him any wages. On October 31, 2011, plaintiff sent an e-mail to defendant, requesting a hearing. A hearing was scheduled for November 15, 2011, which lasted fifteen (15) minutes and included testimony from plaintiff and his supervisor. On December 2, 2011, defendant's hearing officer, Karen Williamson, upheld plaintiff's suspension and recommendation for termination on the following reasoning:

> In reviewing the Policy, Fighting is a Class IV Major Infraction, which warrants termination. The Policy makes no exception for defending yourself under the fighting policy. In fact, the Policy as written appears to specifically state that whether the employee was the aggressor or acting in self-defense makes no difference in the determination. The PHA Police investigation report clearly sets forth that there was pushing and shoving between [Plaintiff] and [the resident]. I am therefore bound to uphold the Notice of Suspension with a Recommendation for Termination.

Plaintiff's supervisor thereafter issued a final notice for termination of plaintiff's employment from PHA effective immediately on December 5, 2011. After filing for

unemployment benefits, the Pennsylvania Department of Labor and Industry concluded plaintiff was not responsible for the August 29, 2011 incident.

On February 25, 2013, plaintiff commenced this four-count complaint pursuant to Article I, Section 1 of the Pennsylvania Constitution. Under each count, plaintiff seeks compensatory damages, including, "but not limited to, an award of back pay, together with prejudgment interest; reinstatement; an award of front pay to the extent reinstatement is not feasible; and award of non-economic compensatory damages...."

On April 3, 2013, defendant filed preliminary objections in the nature of a demurrer, alleging plaintiff, an at-will employee, did not enjoy a property right to his employment with PHA, and thus, is not entitled to due process prior to disciplinary action being issued against him. Plaintiff responded on April 24, 2013. By court order dated June 6, 2013, this court sustained defendant's objections and dismissed plaintiff's complaint.

Plaintiff filed this timely appeal on June 24, 2013. Plaintiff was not directed to file a Pennsylvania Rules of Appellate Procedure 1925(b) statement of errors complained of on appeal, but provided the following statement of questions involved to the Commonwealth Court of Pennsylvania:

1. [D]id the Philadelphia Housing Authority violate Simbarashe Madziva's constitutional right to self-defense by suspending and terminating his employment in violation of Article 1, §1 of the Pennsylvania Constitution?

2. [D]id Mr. Madziva forfeit his constitutional right to self-defense and his right to substantive and procedural due process by virtue of his at-will employment with the Philadelphia Housing Authority?

3. [W]hether the Philadelphia Housing Authority is equitably estopped from denying Mr. Madziva the fair hearing procedures that it promised him in its Employee Handbook?

## LEGAL ANALYSIS

The "scope of review from a trial court's order[] granting preliminary objections is limited to determining whether the trial court committed legal error or abused its discretion."[1]

A demurrer can only be sustained where the complaint clearly is insufficient to establish the pleader's right to relief. A preliminary objection in the nature of a demurrer admits as true all well-pled material, relevant facts and every inference fairly deducible from those facts. The pleader's conclusions or averments of law are not considered to be admitted as true by a demurrer. Since the sustaining of a demurrer results in a denial of the pleader's claim or a dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim upon which relief may be granted. If the facts as pleaded state a claim for which relief may be granted under any theory of law, there is

---

1. *Palmer v. Bartosh*, 959 A.2d 508, 512 n. 2 (Pa. Cmwlth. 2008) (citing *Higby Develop., LLC v. Sartor*, 954 A.2d 77 (Pa. Cmwlth. 2008)).

sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected.[2]

## I. Defendant Did Not Violate Plaintiff's Constitutional Right

The first issue plaintiff presents on appeal is whether PHA violated plaintiff's constitutional right to self-defense pursuant to Article 1, §1 of the Pennsylvania Constitution by suspending and terminating his employment. In addressing this issue, it is undisputed plaintiff was an at-will employee, and his suspension and termination of employment was in accordance with PHA's policy, which defines fighting as a punishable offense and as a basis for termination.

Pennsylvania law is "abundantly clear that, as a general rule, employees are at-will, absent a contract, and may be terminated at any time, for any reason or for no reason."[3] Moreover, "[a]n individual employed by a local agency is an at-will employee and does not enjoy a property right in her employment unless she has an expectation of continued employment guaranteed by contract or statute."[4]

Plaintiff admits he is an at-will employee, but he claims this litigation is not based upon his wrongful discharge but rather upon violations of his constitutional and due process rights. Notwithstanding the fact plaintiff seeks, *inter alia*,

---

2. *Id.* (internal citations omitted).

3. *Stumpp v. Stroudsburg Municipal Authority*, 540 Pa. 391, 396, 658 A.2d 333, 335 (1995) (citations omitted); *see also Davenport v. Reed*, 785 A.2d 1058, 1063.

4. *Pavonarius v. City of Allentown*, 157 Pa. Cmwlth. 116, 121, 629 A.2d 204, 207 (1993) (citing *Gough v. Borough of Norristown*, 66 Pa. Cmwlth. 401, 403, 444 A.2d 839, 840 (1982)).

compensatory damages for back pay and reinstatement, plaintiff's constitutional claims are without merit.

"Self-defense is a basic right, recognized by many legal systems from ancient times to the present day[.]"[5] In *District of Columbia v. Heller*, the United States Supreme Court held individual self-defense is the *"central component"* of the Second Amendment right to keep and bear arms.[6] The United States Supreme Court concluded citizens must be permitted "to use [handguns] for the core lawful purpose of self-defense."[7]

Thus, although it appears that self-defense is a right in-and-of itself, it is not discussed independent of the Second Amendment right to bear arms in self-defense. The instant litigation does not involve a violation of plaintiff's right to bear arms for the lawful purpose of self-defense. Instead, plaintiff maintains his constitutional right to self-defense was violated when his employer, in compliance with its Human Resources Manual, discharged plaintiff for fighting on company premises.

Plaintiff's complaint would likewise fail under the public policy exception to the general at-will employee doctrine.[8] Despite the fact some states recognize the right to

---

5. *McDonald v. City of Chicago, Ill.*, 130 S. Ct. 3020 (2010).

6. *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008) (held that the Second Amendment protects the right to keep and bear arms for purposes of self-defense and struck down a District of Columbia law that banned the possession of handguns in the home).

7. *Id.* at 630.

8. In his response to preliminary objections, plaintiff argued his termination was not in violation of a public policy, as to trigger the public policy exception to the general rule. However, in his questions raised on appeal, plaintiff argues his suspension and termination are directly contrary to Pennsylvania's long-standing public policy that a person cannot be terminated from employment on a basis that infringes

self-defense as a substantial public policy exception in the at-will employment context under their state constitution, Pennsylvania has specifically rejected the individual right of self-defense as a public policy exception to the at-will employee doctrine.[9]

As noted above, Pennsylvania law generally holds "a common-law cause of action for wrongful termination is not recognized in Pennsylvania for an at-will employee."[10] "An exception to this general rule has been recognized in the very limited circumstances, where allowing an employer to discharge an at-will employee would threaten a clear public policy."[11] Pennsylvania courts act on a "case-by-case basis....[and] have carved very narrow

---

his constitutional rights.

9. *Compare Scott v. Extracorporeal, Inc.*, 376 Pa. Super. 90, 545 A.2d 334, 342 (Pa. Super. 1988) (finding discharge of company employee acting in alleged self-defense during fight on company premises did not violate public policy, and thus, not an exception to the at-will doctrine) with *Cocchi v. Circuit City Stores*, 2006 WL 870736 (N.D. Cal. Apr. 3, 2006) (The United States District Court of the Northern District of California recognized a right not to be fired based upon California Constitution's self-defense provision as a public policy exception to the at-will employee doctrine) and *Feliciano v. 7-eleven. Inc.*, 559 S.E.2d 713 (W. Va. 2001) (West Virginia Court of Appeals held, when an at-will employee has been discharged for employment based upon his exercise of self-defense in response to imminent, lethal danger, such right of self-defense constitutes a substantial public policy exception to the at-will employment doctrine and will sustain a cause of action for wrongful discharge).

10. *Davenport*, 785 A.2d at 1063 (citing *Paul v. Lankenau Hosp.*, 524 Pa. 90, 569 A.2d 346 (1990)).

11. *Id.* at 1063 (citations omitted); *see also Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (1998) (termination for filing a claim for workers' compensation benefits is a public policy exception to the general at-will doctrine); *Raykovitz v. K Mart Corp.*, 445 Pa. Super. 378, 665 A.2d 833 (1995) (termination in retaliation for employee seeking unemployment benefits is a public policy exception to the general at-will doctrine); *Reuther v. Fowler & Williams, Inc.*, 225 Pa. Super. 28, 386 A.2d 119 (1978) (termination for missing work for jury duty is a public policy exception to the general at-will doctrine).

exceptions to the at-will rule."[12] "It is generally accepted that to be actionable, the asserted public policy must be one which is already articulated in law or a constitutional provision."[13] "To justify application of the public policy exception, the employee must point to a clear public policy articulated in the constitution, statutes, regulations or judicial decisions directly applicable to the facts in the cases; it is not sufficient that the employer's action toward an employee is unfair."[14]

Thus, "[a]n employer has no right to discharge even an at-will employee if the firing would contravene a clear public policy or if it is effected with the specific intent to harm the employee."[15] However, an employer may discharge an employee "[e]ven when an important public policy is involved…if the employer has a separate plausible and legitimate reason for the discharge."[16]

The Pennsylvania Superior Court examined a similar issue as present here in *Scott v. Extracorporeal, Inc.*, where the plaintiff-employee was discharged for violating the company's policy regarding fighting. On appeal, the Superior Court of Pennsylvania held the employee's discharge in alleged self-defense for fighting on the employer's premises did not violate public policy.[17] In concluding the "discharge lies beyond our power to remedy," the Scott court found "no public policy [was]

12. *Scott*, 376 Pa. Super. at 106, 545 A.2d at 341-42.

13. *Id.* at 106, 545 A.2d at 342.

14. *Davenport*, 785 A.2d at 1063 (citing *Hunger v. Grand Central Sanitation*, 447 Pa. Super. 575, 670 A.2d 173 (1993), *appeal denied*, 545 Pa. 664, 681 A.2d 178 (1996)).

15. *Scott*, 376 Pa. Super. at 95, 545 A.2d at 336.

16. *Davenport*, 785 A.2d at 1064 (citing *Geary, supra*).

17. *Scott*, 376 Pa. Super. at 108, 545 A.2d at 342.

implicated by the discharge."[18]

The Pennsylvania Superior Court explained:

> Nevertheless, it is clear that the employer held her at least partially accountable for the disturbance. We may not deny the employer the right to dismiss due to its subjective evaluation that the employee behaved disruptively. The moral fairness of the firing is simply beyond our power to review. We surely do not condone discharges which are by any objective measure unfair; however, in the context of the facts of this case, the public policy asserted by appellant — the right to exercise self-defense — strikes entirely too near the employer's legitimate interest in discharging employees it perceives to be disruptive. To reverse on this basis would have the unwise effect of transferring to the judicial forum the duty of evaluating the propriety of management decisions.[19]

Thus, the Superior Court of Pennsylvania found self-defense was articulated neither in law or in a constitutional provision.

Instantly, defendant suspended and terminated plaintiff for "fighting" on company premises in violation of defendant's policy. Defendant held plaintiff partially responsible for the fight. Pursuant to *Scott*, plaintiff's right to exercise self-defense does not surpass defendant's legitimate interest in discharging employees it perceives to be disruptive.

---

18. *Id.* at 107, 545 A.2d at 342.
19. *Id.* at 108, 545 A.2d at 342-43 (internal citations and quotation omitted).

Therefore, even assuming, *arguendo*, plaintiff established PHA violated a clear public policy in connection with his discharge, defendant still had a separate, plausible and legitimate reason to discharge him, prohibiting plaintiff relief under his asserted claims.

## II. Defendant Did Not Violate Plaintiff's Substantive or Procedural Due Process Rights.

Next, plaintiff claims defendant's policy, which includes acts of self-defense within the meaning of fighting, violates his procedural and substantive due process rights. Regarding his procedural due process rights, plaintiff argues he "was entitled to a variety of pre-termination and post-termination processes" under PHA's disciplinary process.[20]

"Substantive due process is the esoteric concept interwoven within our judicial framework to guarantee fundamental fairness and substantial justice, and its precepts protect fundamental liberty interests against infringement by the government."[21] "[F]or substantive due process rights to attach there must first be the deprivation of a property right or other interest that is constitutionally protected."[22]

Procedural due process of law "requires that an individual is entitled to adequate notice of the charges against him and an opportunity to be heard."[23] "Adequate notice, for procedural due process purposes, requires

20. Plaintiff's complaint (hereinafter "pl.'s compl."), ¶19.
21. *Khan v. State Bd. of Auctioneer Examiners*, 577 Pa. 166, 183, 842 A.2d 936, 946 (2004) (internal citation and quotation omitted).
22. *Id.*
23. *Palmer*, 959 A.2d at 514-15 (citation omitted).

at a minimum that notice contain a sufficient listing and explanation of the charges against the individual."[24] Similar to substantive due process, "procedural due process applies only to deprivation of a property interest or a liberty interest protected by the Fourteenth Amendment."[25] "The state law governs a determination of whether one has a property interest in continued employment."[26]

Thus, to maintain a claim for substantive or procedural due process of law in Pennsylvania, the plaintiff must first establish he had a property interest in his employment. However, the law of this Commonwealth is clear that, "[a]n individual employed by a local agency is an at-will employee and does not enjoy a property right in her employment unless she has an expectation of continued employment guaranteed by contract or statute."[27] Further, our Commonwealth Court held: "[P]ublic employees in Pennsylvania are employees-at-will subject to summary dismissal for a good reason, a bad reason or no reason at all, unless the legislature explicitly confers tenure as an integral part of a comprehensive governmental scheme."[28]

Here, plaintiff admits he is an at-will employee of a local Commonwealth agency. Accordingly, plaintiff does not enjoy a property right to his employment with PHA to maintain a claim for violation of his substantive or procedural due process rights.

---

24. *Id.*

25. *Davenport*, 785 A.2d at 1062 (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972)).

26. *Id.* (citing *Bishop v. Wood*, 426 U.S. 341 (1976)).

27. *Pavonarius*, 157 Pa. Cmwlth. at 121, 629 A.2d at 207 (citing *Gough, supra*).

28. *Davenport*, 785 A.2d at 1063 (citations omitted).

However, plaintiff argues PHA's Human Resource Manual establishes a disciplinary policy under which plaintiff, an at-will employee, is entitled to pre- and post-termination processes. According to plaintiff, this policy induced a reasonable expectation of a fair and impartial hearing.[29] Further, plaintiff contends this policy requires his disciplinary action be supported by just cause.[30]

In *Scott*, the Superior Court of Pennsylvania rejected a similar argument where the plaintiff employee argued the employee handbook, given to her when she commenced her employment, contained a "just cause" provision to preclude the employer from discharging her at-will.[31] In finding the handbook did not contain, either expressly or by clear implication, a "just cause" provision, the Pennsylvania Superior Court explained: "A handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule."[32]

Similarly, in *Martin*, the Pennsylvania Superior Court rejected the plaintiff's argument the handbook evidenced an intent to convert those employees who received it into employees who could only be discharged for an objective

---

29. Pl.'s compl. at ¶¶19, 51.

30. *Id.*

31. *Scott*, 376 Pa. Super. at 97, 545 A.2d at 337. The "Standards of Behavior and Conduct" section provided violations of certain enumerated offenses "can result in *immediate* suspension or termination." *Id.* Included in the list were: "Fighting, horseplay, intoxication, gambling, and disorderly, immoral or unlawful conduct on Company property." *Id.*

32. *Id.* (noting the most recent trend in Pennsylvania was not to find the lack of a bargained-for exchange a bar to enforcing handbooks against employers.)

"just cause." The *Martin* court stated:

> Appellant had been hired as an at-will employee. To now hold that the handbook allowed her discharge only for just cause would, in effect, convert her into an employee with a contract for an indefinite term who could be fired only for objective just cause. This would be a modification of immense proportions. For such an extreme modification of a preexisting contract, we would require a clear statement of an intent to so modify. We do not believe a reasonable person in the appellant's position would have read this handbook provision as converting her from an at-will employee to an employee with an indefinite contract who could never be discharged without objective just cause.[33]

As in *Martin*, the subject handbook does not contain a clear indication defendant, as plaintiff's employer, intended to overcome the at-will presumption. Although neither party has presented this court with the subject handbook, plaintiff states the applicable provision classifies fighting, regardless of whether the employee was the aggressor or acting in self-defense, as warranting termination.[34]

Plaintiff does not dispute self-defense fits under the definition of fighting in PHA's policy, a punishable offense. However, plaintiff argues PHA's policy creates an irrebutable presumption that acts of self-defense are always cause for suspension and termination, and "the policy provides no means for properly contesting this presumption through a fair hearing and appeal in violation

---

33. *Martin*, 354 Pa. Super. at 215, 511 A.2d at 838.
34. Pl.'s complaint at ¶¶5, 17-18, 34.

of [Plaintiff's] right to procedural due process of law."[35]

As plaintiff noted, an at-will employee, such as himself, is entitled to no relief, *i.e.*, pre-termination and post-termination processes, pursuant to defendant's disciplinary policy with respect to fighting. A reasonable employee, including plaintiff, would understand this provision to mean defendant is free to decide whether a discharge is appropriate. Further, a reasonable person would not read this handbook provision as converting him from an at-will employee to an employee with an indefinite contract who could never be discharged without just cause.

Plaintiff was discharged based upon defendant's believe he was involved in a fight. Regardless of whether plaintiff acted in self-defense, it is clear defendant held him partially accountable for the disturbance as evidenced by defendant's hearing officer's decision, upholding plaintiff's suspension and recommendation for termination.[36]

Plaintiff, therefore, did not have a reasonable expectation of continued employment in his employment. Rather, he was an at-will employee subject to summary dismissal and did not have a property interest or a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.

### III. Defendant Is Not Equitably Estopped from Denying Plaintiff the Fair Hearing Procedures in

---

35. Plaintiff's statement of questions involved, ¶2.

36. Pl.'s compl. at ¶30. Karen Williamson, the PHA Hearing Officer, stated in relevant part: "The PHA Police Investigation report clearly sets forth that there was pushing and shoving between Madziva and [the resident]." *Id.*

## Defendant's Employee Handbook

Last, plaintiff claims defendant is equitably estopped from denying him the fair hearing procedures set forth in the Employee Handbook based upon its failure to comply with the written policies regarding due process rights in the event of a proposed suspension or termination from employment.

"Equitable estoppel is a doctrine of fundamental fairness designed to preclude a party of depriving another of the fruits of a reasonable expectation when the party inducing the expectation knew, or would have known, that the other would rely."[37] However, equitable estoppel has been affirmatively rejected by Pennsylvania appellate courts as an exception to the at-will rule.[38] "[T]he doctrine of equitable estoppel is not an exception to the employment at will doctrine. An employee may be discharged with o[r] without cause, and [Pennsylvania] law does not prohibit firing an employee for relying on an employer's promise."[39]

Plaintiff's argument defendant is equitably estopped from denying him the fair hearing procedures promised to him in its employee handbook is therefore irrelevant in determining whether plaintiff has a protectable property interest in his employment. Plaintiff was suspended and discharged pursuant to his violation of defendant's policy, making fighting a punishable offense. Defendant's suspension and ultimate termination of

---

37. *Department of Commerce v. Casey*, 154 Pa. Cmwlth. 505, 519-20, 624 A.2d 247, 254 (1993) (citing *DeFrank v. County of Greene*, 50 Pa. Cmwlth. 30, 412 A.2d 663 (1980)).

38. *Stumpp*, 540 Pa. at 397, 658 A.2d at 336.

39. *Id.* (citing *Paul*, 524 Pa. at 95, 569 A.2d at 348).

plaintiff's employment did not violate any constitutional or procedural or substantive due process rights.

## CONCLUSION

Wherefore, for the reasons stated above, it is respectfully requested the court's order dated June 6, 2013 be affirmed on appeal.