**Brenda A. OWENS, Appellant**

v.

**LEHIGH VALLEY HOSPITAL.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 6, 2014.

Decided Nov. 7, 2014.

860 ■

Donald P. Russo, Bethlehem, for appellant.

Andrea M. Kirshenbaum, Philadelphia, for appellee.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, P. KEVIN BROBSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Senior Judge JAMES GARDNER COLINS.

The issue before this Court is whether an employee alleging a claim for wrongful discharge in violation of the clear mandate of public policy embodied in the Workers' Compensation Act[1] must allege that a claim petition was filed with the Workers' Compensation Bureau (Bureau) or whether it is sufficient for the employee to allege that a work-related injury was reported to the employer and the employer paid compensation in lieu of workers' compensation benefits.

On December 2, 2013, Brenda A. Owens (Appellant) filed a second amended complaint (complaint) alleging one count of wrongful discharge in violation of public policy. Pennsylvania does not recognize a claim for wrongful discharge; where not

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

restrained by contract, employment in the Commonwealth is at-will and an employee may be discharged with or without cause. *See, e.g., Weaver v. Harpster*, 601 Pa. 488, 975 A.2d 555 (2009); *Henry v. Pittsburgh & L.E.R. Co. et al.*, 139 Pa. 289, 21 A. 157 (1891). A public-policy exception to this doctrine was recognized by the Pennsylvania Supreme Court in *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (1998), where the Court held that an at-will employee who alleges a claim of retaliatory discharge for filing a workers' compensation claim has stated a common law cause of action for which relief may be granted. Appellant's complaint alleges that she was discharged by Lehigh Valley Hospital (Employer) in retaliation for filing workers' compensation claims with Employer. Employer filed preliminary objections in the nature of a demurrer on December 27, 2013, alleging that Appellant had failed to state a claim for relief because her second amended complaint clearly stated that she had never filed a claim petition with the Bureau. On February 27, 2014, Lehigh County Court of Common Pleas (Trial Court) entered an order sustaining Employer's demurrer and dismissing Appellant's second amended complaint.

In an attached opinion, the Trial Court relied upon *Landmesser v. United Air Lines, Inc.*, 102 F.Supp.2d 273 (E.D.Pa. 2000), wherein the federal district court concluded that once the Pennsylvania Supreme Court had an opportunity to define the elements necessary to establish a *prima facie* case for wrongful discharge, it would adopt the test applied in Title VII [2] retaliation claims, specifically that a plaintiff must allege that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. (Trial Court Op. at 5 (*citing Landmesser*, 102 F.Supp.2d at 277–278).) Using these elements to determine whether or not Appellant stated a *prima facie* case, the Trial Court concluded that she had not. The Trial Court reasoned that here, unlike the appellant in *Shick*, Appellant did not allege that she filed a claim petition with the Bureau and instead alleges that her occupational injuries were not challenged by Employer and that her medical bills were paid. (Trial Court Op. at 5.) As a result of Appellant's failure to allege that she filed a claim petition with the Bureau, the Trial Court reasoned that Appellant could not state a claim for wrongful discharge because she had not alleged that she engaged in a protected activity. (*Id.* at 6.) Appellant appealed the Trial Court's order to this Court for review.[3]

Before this Court, Appellant argues that the Trial Court erred in interpreting *Shick* to require that an employee must file a claim petition with the Bureau

**2.** Civil Rights Act of 1964, 42 U.S.C. § 2000e–2.

**3.** Appellant should have appealed the Trial Court's order to Superior Court; this is an appeal from the Court of Common Pleas and is not (1) a Commonwealth civil case; (2) a governmental or Commonwealth regulatory criminal case; (3) a secondary review of an appeal from a Commonwealth agency; (4) a local government civil or criminal matter; (5) an action relating to non-profit corporations arising under Title 15; (6) an eminent domain proceeding; or (7) a case presenting issues of immunity waiver. *See* 42 Pa.C.S. § 762. Appellee failed to object to this Court's jurisdiction. As a result, and in the interests of judicial economy, we declined to transfer the matter to Superior Court *sua sponte* and our jurisdiction was perfected. *See* 42 Pa.C.S. § 704; *see also Newman v. Thorn*, 359 Pa.Super. 274, 518 A.2d 1231 (1986) (discussing considerations when determining whether to transfer a case *sua sponte* ).

in order to allege a claim for wrongful discharge in retaliation for seeking workers' compensation benefits.[4] Appellant contends that such a narrow reading would leave a large swath of workers unprotected by the public policy exception enunciated in *Shick* as, like here, most workers' compensation claims are processed by an employer without objection and do not require a petition to be filed with the Bureau.

■ Employer argues that Appellant has pled only vague allegations that she reported her injuries to Employer and that Employer paid her medical bills. Employer argues that, as the Trial Court concluded, these allegations are insufficient to establish that Appellant engaged in a protected activity. Employer contends that in order to state a claim under our Supreme Court's narrow holding in *Shick*, a plaintiff must allege that a claim petition seeking compensation for a work-related injury was filed with the Bureau. In the alternative, Employer argues that under the Title VII test applied by the Trial Court, Appellant has failed to plead a causal connection between any alleged protected activity and her dismissal.

Our Supreme Court first recognized in *Geary v. U.S. Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), that an at-will employee may have a cause of action against an employer for wrongful discharge when the discharge threatens a clear mandate of public policy.[5] Although *Geary* recognized a cause of action for wrongful discharge in violation of public policy, the Court held that the employer had not violated a public policy and that the employer did have a legitimate reason to discharge the employee because the employee had bypassed his superior to report his concerns about a defective product, which had disrupted employer's normal operational procedures. *Id.* at 181.

From *Geary* forward the courts of the Commonwealth have repeatedly underscored that deference is owed to how an employer operates it business and addresses disruption.[6] In *Davenport v. Reed*, 785 A.2d 1058 (Pa.Cmwlth.2001), this Court stated that "to justify the application of the public policy exception, the employee must point to a clear public policy articu-

---

**4.** When reviewing whether preliminary objections in the nature of a demurrer were properly sustained, our standard of review is *de novo* and our scope of review is plenary. *Mazur v. Trinity Area School District*, 599 Pa. 232, 961 A.2d 96, 101 (2008). We may affirm a grant of preliminary objections only when it is clear and free from doubt that, based on the facts pled, the plaintiff will be unable to prove facts legally sufficient to establish a right to relief. *Id.* In evaluating the legal sufficiency of the challenged pleading, we accept as true all well-pled, material, and relevant facts alleged and every inference that is fairly deducible therefrom. *Id.*

**5.** The Court stated: "It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, partic-

ularly where some recognized facet of public policy is threatened." *Geary*, 319 A.2d at 184.

**6.** For example, in *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 545 A.2d 334 (1988), the Superior Court held that an employee's claim that she was wrongfully discharged in violation of her right to self-defense when another employee physically attacked her did not state a valid claim for relief. The Superior Court concluded that no public policy was implicated and that an employer has "the right to dismiss due to its subjective evaluation that the employee behaved disruptively," and that "the moral fairness of firing is simply beyond our power to review." *Id.* at 342. In reaching this conclusion, the Superior Court defined public policy as one which must be "already articulated in law or a constitutional provision." *Id.*

lated in the constitution, statutes, regulations or judicial decisions directly applicable to the facts in the case." *Id.* at 1063–64. This Court also noted that even where an important public policy is identified, *Geary* made clear that a claim will not succeed where an employer has a "separate, plausible, and legitimate reason for the discharge." *Davenport,* 785 A.2d at 1064.

*Shick* was the first instance where our Supreme Court both recognized a claim for wrongful discharge in violation of a clear mandate of public policy and held that the plaintiff had stated a claim for which relief may be granted.[7] In *Shick,* the employee sustained a knee injury while at work and a notice of compensation payable was issued. *Id.* at 1232. When the employee was released to return to work by his physician, his employer told him that his job was no longer available due to his pursuit of a workers' compensation claim. *Id.* The employee filed a claim for wrongful discharge and the case came before our Supreme Court on appeal from an order granting employer's demurrer. *Id.*

In analyzing the judiciary's role in identifying a clear mandate of public policy, the Court reviewed a series of cases where it had been asked to make public policy determinations and concluded that "we recognized the independent authority of the courts to discern public policy in the absence of legislation. Where the legislature has spoken, however, we will not interpret statutory provisions to advance matters of supposed public interest." *Id.* at 1237. The Court also concluded that it was appropriate for the judiciary to act as the voice of the community to make public policy pronouncements "only when a given policy is so obviously against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it." *Shick,* 716 A.2d at 1236 (*quoting Mamlin v. Genoe,* 340 Pa. 320, 17 A.2d 407, 409 (1947)). The Court cautioned that public policy is to be ascertained from laws and legal precedents, not general considerations of public interest. 716 A.2d at 1236.

---

7. The vast majority of claims for wrongful discharge in violation of public policy have proceeded in federal court or, when appealed from the Court of Common Pleas, advanced to the Superior Court. Prior to *Shick,* the Superior Court held that a plaintiff had stated a valid claim for wrongful discharge in violation of public policy where the employee alleged he was discharged for serving jury duty. *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978). Other examples where Superior Court has held that a claim for wrongful discharge exists include: *Raykovitz v. K Mart Corp.,* 445 Pa.Super. 378, 665 A.2d 833 (1995) (for filing an unemployment compensation claim); *Highhouse v. Avery Transportation,* 443 Pa.Super. 120, 660 A.2d 1374 (1995) (same); and *Kroen v. Bedway Security Agency,* 430 Pa.Super. 83, 633 A.2d 628 (1993) (for refusing to submit to a polygraph test); *Field v. Philadelphia Electric Company,* 388 Pa.Super. 400, 565 A.2d 1170 (1989) (for performing statutory duty to report mishandling of radiation to Nuclear Regulatory Commission). Examples where the Superior Court has held that no claim exists include: *Hineline v. Stroudsburg Electric Supply Co.,* 384 Pa.Super. 537, 559 A.2d 566, *appeal denied* 524 Pa. 628, 574 A.2d 70 (1989) (for disengaging an illegal surveillance system); *McGonagle v. Union Fidelity Corporation,* 383 Pa.Super. 223, 556 A.2d 878 (1989) (for general counsel's refusal to approve advertising mailings he believed violated unspecified insurance laws of other states); and *Rossi v. Pennsylvania State University,* 340 Pa.Super. 39, 489 A.2d 828 (1985) (for complaining about the waste of taxpayer money). The Superior Court has also noted three categories where a violation of public policy has consistently been held to support a claim for wrongful discharge: (1) requiring an employee to commit a crime; (2) preventing an employee from complying with a statutorily imposed duty; and (3) discharging an employee when specifically prohibited from doing so by statute. *Mikhail v. Pennsylvania Organization for Women in Early Recovery,* 63 A.3d 313, 317 (Pa.Super.2013).

Applying this precept to the claim alleged in *Shick*, the Court first examined the history and structure of the Workers' Compensation Act. The Court noted that the "exclusivity" of the Workers' Compensation Act was rooted in the historical *quid pro quo* between employees who agree to forgo tort remedies and the employers who agree to no-fault payment for work-related injuries that result in a loss of earning power. *Id.* The Court concluded that this historical balance would be disrupted by an employer's ability to penalize an employee for filing a workers' compensation claim and that the statutory right would be thoroughly undermined. *Id.* Therefore, the Court held that a claim for wrongful discharge will lie where an employee alleges the discharge from employment was due to filing a workers' compensation claim. *Id.* at 1238.

Our Supreme Court again examined a claim by an employee alleging his employer had discharged him in violation of the public policy articulated in the Workers' Compensation Act in *Rothrock v. Rothrock Motor Sales, Inc.*, 584 Pa. 297, 883 A.2d 511 (2005). In *Rothrock* the employee was not himself a workers' compensation claimant, but alleged that he was discharged for failing to dissuade a subordinate employee from filing a workers' compensation claim. *Id.* at 514. Our Supreme Court held "as a necessary corollary to the policy established in [*Shick*], that a Pennsylvania employer may not seek to have a supervisory employee dissuade a subordinate employee from seeking [workers' compensation] benefits. If an employer does so, the supervisory employee shall have a cause of action for wrongful discharge from employment." *Rothrock*, 883 A.2d at 517.

While Appellant contends that *Shick* and *Rothrock* directly support her claim, Employer contends that a line of cases where the Court rejected an exception to the at-will employment doctrine are dispositive. In these cases, the Court rejected a common law claim for wrongful discharge in violation of public policy where administrative remedies were not exhausted, *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1989), where statutory remedies exist but permissibly exclude the particular employee seeking to bring a common law claim, *Weaver v. Harpster*, 601 Pa. 488, 975 A.2d 555 (2009), and where the public policy was not the policy of this Commonwealth but derived from another source, *McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283, 288–289 (2000).

The first of these cases, *Clay*, concerned a claim brought by a husband and wife alleging that they had been discharged because the wife had "rebuffed sexual advances made by one of the employer's management level employees." 559 A.2d at 918. The Court held that because husband and wife had failed to seek redress through the Pennsylvania Human Relations Commission, they were barred from seeking redress in court. *Id.* The Court examined the Pennsylvania Human Relations Act[8] (PHRA) and judicial decisions interpreting the PHRA, and concluded that a discharged employee could not bring a claim for wrongful discharge based on discrimination without first exhausting the administrative remedies available under the PHRA. *Id.* at 919; *see also Carlson v. Community Ambulance Services, Inc.*, 824 A.2d 1228, 1231 (Pa.Super.2003) (no claim for wrongful discharge where employee failed to exhaust administrative remedies under PHRA and with the Equal Employment Opportunity Commission for discrimination prohibited by the Pregnancy Discrimination Act[9]).

---

8. Act of October 27, P.L. 744, *as amended,* 43 P.S. §§ 951–963.

In *Weaver*, our Supreme Court again examined a claim for wrongful discharge in violation of the clear public policy articulated in the PHRA and held that the PHRA did not provide a public policy exception to the at-will employment doctrine for sex discrimination by an employer not covered by the PHRA.[10] 975 A.2d at 556. The PHRA contains a broad public policy declaration against discrimination, including discrimination based on sex. Section 2 of the PHRA, 43 P.S. § 952. The PHRA "establishes the right to be free from sex discrimination in the workplace and provides the administrative procedures by which those rights shall be vindicated." *Weaver*, 975 A.2d at 565; *see also* Section 3 of the PHRA, 43 P.S. § 953. However, the General Assembly created an exemption from the PHRA for employers with less than four employees. Section 4 of the PHRA, 43 P.S. § 954. The employee in *Weaver* seeking to bring a common law claim for wrongful discharge in violation of the clear public policy mandate articulated in the PHRA was seeking to do so against an employer with less than four employees. 975 A.2d at 557. The Court concluded that just as it was bound by the broad policy declaration against discrimination contained in the PHRA, it was bound by the exemption for small employers, and was not free to disregard one provision of the PHRA in order to enforce another.

*Id.* at 569. As a result of the unambiguous policy determination made by the General Assembly, the Court held that it was "constrained to conclude that a common law claim for wrongful discharge, resulting from sex discrimination, will not lie against those employers," with less than four employees. *Id.* at 556–557, 569.

Much as *Clay* held that a common law claim will not lie where administrative remedies provided by statute have not been exhausted and *Weaver* held that a common law claim will not lie where the General Assembly has made clear public policy determinations when fashioning a statutory right that exclude a class of employees, our Supreme Court expressly addressed the boundaries of a common law claim for wrongful discharge in violation of a clear public policy in *McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283 (2000), when it held that a wrongful discharge claim will not lie where the public policy of this Commonwealth is not the policy relied upon for the violation alleged. *Id.* at 288–289. *McLaughlin* concerned an employee who brought a claim against her employer alleging that she was discharged for making internal complaints that workplace chemical exposure violated the maximum allowed by the federal Occupational Health and Safety Act[11] (OSHA), but in which she made no claim concerning Pennsylvania

9. The Pregnancy Discrimination Act is found in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1). The Equal Employment Opportunity Commission bears the responsibility for Title VII enforcement. 42 U.S.C. §§ 2000e–4(g), 2000e–5(f)(1).

10. The Court also held that the Equal Rights Amendment of the Pennsylvania Constitution, Article 1 § 28, did not reflect the clear mandate of public policy necessary to bring a wrongful discharge claim. *Weaver*, 975 A.2d

at 572. The Court concluded that it was the exclusivity of the PHRA as a means to vindicate the right to be free of discrimination that was preventing the employee from bringing her claim and because the PHRA makes classifications that limit the right based upon the size of the employer rather than the gender of the person seeking to vindicate the right, the classification did not violate the Equal Rights Amendment. *Id.*

11. 29 U.S.C. §§ 651, 660(c).

statutes addressing health and safety.[12] 750 A.2d at 286. In reaching its holding, the Court stated:

The Plaintiff in some way must allege that some *public* policy of *this* Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee. Public policy of the Commonwealth must be just that, the policy of this Commonwealth. In cases like *Shick* there is no question that the public interest and policy of this Commonwealth were at stake, for if we allowed an employer to discharge an employee for filing a complaint with a Commonwealth agency such as the Workers' Compensation Appeal Board, we impact the rights of that employee and the public by undermining the very purposes of a statute of this Commonwealth.

*Id.* at 289 (emphasis in original). Before *McLaughlin* reached the Supreme Court, the Superior Court also concluded that the employee had failed to state a claim, but for different reasons. *McLaughlin,* 696 A.2d 173, 178 (Pa.Super.1997), *affirmed in part by McLaughlin.* The Superior Court held below that because the employee had not filed a claim pursuant to OSHA and had only reported the violations to her employer, disrupting the orderly management of the employer's business in the process, the employer had a legitimate reason to discharge the employee. *Id.* at 178. The Superior Court distinguished *Shick* on the basis that OSHA, unlike the Workers' Compensation Act, did not provide a statutory prohibition against discharging an employee who reports a violation. *Id.* Our Supreme Court affirmed the

dismissal of the wrongful discharge claim on the grounds that the employee relied upon federal regulations alone as the source for the alleged violation of public policy. *McLaughlin,* 750 A.2d at 286. In its discussion, however, the Court stated that "at most she made an internal complaint to her employer, and not to any public agency within the Commonwealth. She points to no Pennsylvania statutory scheme that her discharge would undermine," and that she "had not shown any policy of this Commonwealth that is violated, and has not established how a private report to an employer would undermine the workings of any Commonwealth agency or any statutory scheme within the Commonwealth." *Id.* at 288. The Court also relied upon, in a footnote to this discussion, *Fox v. MCI Communications Corp.,* 931 P.2d 857 (Utah 1997), where the Utah Supreme Court held that a private report of criminal conduct to an employer, rather than a public agency, could not give rise to a claim for wrongful discharge because there was no averment that the public was at potential risk of harm and therefore only private interests were at stake. *McLaughlin,* 750 A.2d at 289 n. 11.

Here, Employer argues that *McLaughlin's* discussion of the implications of an internal versus external complaint, as well as *Clay* and *Weaver's* emphasis on the lack of a common law claim for employees who have failed to take advantage of or been deliberately excluded from statutory remedies, supports its position that Appellant has failed to state a common law claim for wrongful discharge because she did not file a claim petition with the Bureau. Appellant argues that Employer's position is contrary to our Supreme Court's holdings

**12.** The Court distinguished *Field v. Philadelphia Electric Company,* 388 Pa.Super. 400,

565 A.2d 1170 (1989).

in *Rothrock* and *Shick,* as well as the Court's clear reliance in *McLaughlin* on the need to safeguard the effectiveness of the Workers' Compensation Act as an example of type of public policy consideration that supports a common law claim for wrongful discharge.

Appellant alleges in her second amended complaint that she suffered a work-related injury, that she reported this injury to her employer, that she was paid short-term disability in lieu of workers' compensation, and that she was discharged when her short-term disability ended due to an accumulation of claims for work-related injuries. Appellant does not allege that she currently has a compensable work-related injury. Instead, Appellant alleges that she was discharged for past claims. As a result of these allegations, Appellant is quite unlike the employees in *Clay* and *Weaver.* Contrary to the employee in *Clay,* there are no administrative procedures that she can and must exhaust. Contrary to the employee in *Weaver,* Appellant's Employer is covered by the Workers' Compensation Act.

The Workers' Compensation Act provides that the running of the three-year statute of limitation for filing a claim petition will be tolled if payments in lieu of workers' compensation have been made with the intent to compensate an employee for a work-related injury, allowing the employee to file a claim petition within three years of the time the most recent payment was made. Section 315 of the Workers' Compensation Act, 77 P.S. § 602. This provision recognizes that payment to an employee for a work-related injury by an employer may be made without a claim petition being filed, and that such agreements do not deprive an employee of the statutory right to file a claim petition

should the agreement fail to sufficiently compensate the employee. *See, e.g., Schreffler v. Workers' Compensation Appeal Board (Kocher Coal Co.),* 567 Pa. 527, 788 A.2d 963, 969 (2002); *Bergmeister v. Workmen's Compensation Appeal Board (PMA Ins. Co.),* 134 Pa.Cmwlth. 104, 578 A.2d 572, 574 (1990) (holding short-term disability payments were made in lieu of workers' compensation and tolled the statute of limitation for filing a claim petition), *affirmed by,* 529 Pa. 1, 600 A.2d 531 (1991).

Employer relies on Section 315 of the Workers' Compensation Act, 77 P.S. § 602, for the argument that Appellant should have filed a claim petition. Yet, Appellant does not allege that she is seeking compensation because of her previous work-related injuries, which would necessitate the filing of a workers' compensation claim petition; taking the allegations in her complaint as true, Appellant would not have an adequate remedy under the Act, much unlike the employees in *Clay,* as the Workers' Compensation Act does not provide a statutory remedy for wrongful discharge. What Section 315 does do is demonstrate that Appellant, unlike the employee in *Weaver,* was intended to fall within the ambit of the Workers' Compensation Act. Whereas the unambiguous public policy determination made by the General Assembly under the PHRA excluded the employee in *Weaver,* the public policy determination here clearly intended employees like Appellant to have recourse under the Workers' Compensation Act for work-related injuries that result in a loss of compensation.

However, whether Appellant could or could not file a claim for workers' compensation benefits now has no bearing on whether she can bring her common law claim, as our Supreme Court made clear in

*Rothrock.* The employee in *Rothrock* was found to have a claim not because the subordinate employee had filed a workers' compensation claim petition, but because allowing an employer to compel its supervisors to dissuade employees from exercising their rights under the Workers' Compensation Act would undermine the public policy of the Commonwealth embodied in the Act.

As discussed in *Shick* and *Rothrock,* the Workers' Compensation Act reflects both the historical *quid pro quo* between employers and employees, and the public policy of the Commonwealth. If an employer could discharge an employee for a work-related injury because the employee received payment in lieu of compensation, rather than compensation administered by the Bureau, the public policy embodied by the Workers' Compensation Act would be undermined as surely as it would have been in *Shick* and *Rothrock.* Such a holding would create an incentive for employers to steer employees away from filing workers' compensation petitions in order to retain the right to discharge the employee due to the injury, the exact harm the General Assembly intended to prohibit by enacting the Workers' Compensation Act. Appellant may ultimately be unable to carry her burden to establish that her injury was work-related and that the payments she received were for this injury. Employer may be able to demonstrate that there was a separate, plausible, and legitimate reason for Appellant's discharge. However, these are considerations beyond the reach of preliminary objections; on demurrer, Appellant's claim is sufficient.

In the alternative, Employer argues that under the Title VII analysis endorsed by the Trial Court, Appellant has failed to plead a causal connection between any alleged protected activity and her dismissal. We disagree. Appellant alleges that she was discharged because of her work-related injuries and subsequent claims for compensation based upon those work-related injuries. While the complaint lacks detail, it is clear from the factual allegations that Appellant has alleged a sufficient causal connection.

Moreover, the Trial Court should not have used Title VII to analyze the sufficiency of Appellant's claim. In *Rothrock* the Supreme Court concluded that the Superior Court's adoption of a test utilized in Washington State to determine whether a plaintiff has adequately pled a claim for wrongful discharge in violation of public policy was misplaced.[13]  *Rothrock,* 883 A.2d at 516 (*discussing Rothrock v. Rothrock Motor Sales, Inc.,* 810 A.2d 114, 117 (Pa.Super.2002)). Instead the Court held to "Pennsylvania's traditional view that exceptions to at-will termination should be few and carefully sculpted" and analyzed on a case-by-case basis in line with our precedent so as "not to erode an employer's inherent right to operate its business as it chooses." *Id.* Given our Supreme Court's rejection of the test employed by the Superior Court, we decline to endorse the predictive reasoning articulated by the federal district court in *Landmesser* and

---

13. The test utilized by the Superior Court and rejected by the Supreme Court in *Rothrock* asked: (1) whether a clear public policy exists; (2) whether that policy will be jeopardized unless the activity in issue is protected; (3) whether employers in general have "overriding justification" for wanting to use the activity in issue as a factor affecting the decisions to discharge; and (4) whether the particular employee's activity in the case at bar was a substantial factor (i.e. cause of) the particular employer's decision to discharge. *Rothrock,* 883 A.2d at 516 n. 10 (*citing Lins v. Children's Discovery Centers of America, Inc.,* 95 Wash.App. 486, 976 P.2d 168 (1999)).

adopted by the Trial Court to conclude that our Supreme Court will import a Title VII analysis to examine exceptions to at-will employment in Pennsylvania. Rather, we conclude that the Court has already articulated a case specific method of analysis for claims of wrongful discharge in violation of Pennsylvania public policy and deliberately eschewed a general test like that used in the Title VII arena that could have the effect of broadening the narrow confines of this common law claim.

Accordingly, we hold that a cause of action exists under Pennsylvania law for wrongful discharge of an employee who files a claim for workers' compensation benefits with an employer but has not filed a claim petition with the Bureau. The order of the Trial Court granting preliminary objections in the nature of a demurrer is reversed and this case is remanded to the Trial Court for further proceedings.

### ORDER

AND NOW, this 7th day of November, 2014, the order of the Lehigh County Court of Common Pleas in the above-captioned matter is REVERSED and the matter is REMANDED to the Lehigh County Court of Common Pleas for further proceedings consistent with the attached opinion.

Jurisdiction relinquished.