## Lee v. Borough of Downingtown

---

536

C.P. of Chester County, No. 2013-04494

*Samuel C. Stretton*, for plaintiff
*Suzanne McDonough*, for defendant Borough of Downingtown
*Joseph J. Santarone*, for defendant Stephen Sullins
*Charles R. Starnes*, for defendant Jack Law

TUNNELL, *J.*, Jan. 21, 2015—

ORDER

And now, this 21st day of January, 2015, the motions of defendant, Borough of Downingtown, defendant, Stephen Sullins, and defendant, Jack Law, for summary judgment against the plaintiff, Mark Lee, are granted and judgment is accordingly entered in their favor and against plaintiff, Mark Lee, in no amount:[1]

_____

1. On December 11, 2012, plaintiff, Mark Lee ("plaintiff"), instituted suit in the United States District Court in the Eastern District of Pennsylvania by filing a Complaint against Borough of Downingtown, Jack Law ("Law") and Stephen Sullins ("Sullins") (collectively "defendants"), asserting three (3) causes of action, namely Count I, Retaliation — First Amendment; Count II, Violation of the Pennsylvania Whistleblower Statute (43 P.S. §1421, et seq.); and Count III, wrongful termination. On January 7, 2013, all defendants filed a motion to dismiss plaintiff's complaint for failure to state a claim. On May 3, 2013, the honorable Jan DuBois entered an order dismissing Count I, retaliation — first amendment, but denied the motion to dismiss on the two remaining state claims. On May 9, 2013, plaintiff filed a praecipe to transfer his case from federal court to the Chester County Court of Common Pleas. All defendants filed an answer to the complaint denying liability.

Statement of Facts Alleged in the Complaint

Plaintiff's complaint asserts causes of action for violation of the Pennsylvania Whistleblower Law ("PWL") and for wrongful termina-

tion. Plaintiff alleges that he was the Assistant Public Works Director for the Borough of Downingtown from 2007 until he was terminated on June 15, 2012. (Complaint, ¶1.) Plaintiff sued defendant Borough of Downingtown ("Borough") in its capacity as plaintiff's former employer. (Complaint, ¶2.) Plaintiff sued defendant Sullins in his capacity as the Borough Manager. (Complaint, ¶3.) Plaintiff sued defendant Law in his capacity as the Borough Director of Public Works. (Complaint, ¶4.) Plaintiff asserts that he reported directly to his supervisor, Jack Law, the Borough's Public Works Director. (Complaint, ¶10.) Plaintiff alleges that Sullins as Manager of the Borough was charged with the responsibility of overseeing all Borough employees, governance in the Borough, and was the direct supervisor of defendant Law. (Complaint, ¶11.) In his capacity as Assistant Public Works Director, plaintiff supervised Borough employee Alexis Law, wife of defendant Law. At all relevant times, Alexis Law was employed as the Borough Supervisor of Parks. (Complaint, ¶14.)

Plaintiff asserts that in his capacity as supervisor of Alexis Law, he noted that at certain times Ms. Law was not arriving to work on a timely basis, did not personally punch the time clock, did not timely travel to job assignments, remained in the Borough Public Works Building rather than work in the park, showered at work, ate her breakfast at work, used her Borough computer for personal matters and made personal telephone calls during work hours. (Complaint, ¶¶15-16.) Plaintiff avers that Alexis Law traveled to the park shack in Kerr Park where she had set up exercise equipment to exercise while being paid on Borough business. (Complaint, ¶16.) Plaintiff contends that he was told by Borough employees that Alexis Law used the Borough's gas tank and placed gas cans in her vehicle. (Complaint, ¶21.) Plaintiff contends that he complained to his supervisor, Jack Law, concerning Alexis Law's conduct, including exercising during work time, spending time in a park shack where exercise equipment was located, untimely arriving for work and reporting to work assignments, using her computer for personal matters, making personal phone calls, failing to perform her job duties in a diligent manner and what he perceived to be misuse of Borough gasoline. (Complaint, ¶¶18, 21.)

Plaintiff also complained to Sullins concerning the same things about Alexis Law's conduct. Additionally, plaintiff told Sullins that Alexis Law's conduct affected the morale of co-workers. (Complaint, ¶¶18, 19 and 21.) Plaintiff asserts that in 2012, he refused "to continue to sign off on the time cards of Alexis Law" because they were "altered." On April 19, 2012, he found a discrepancy on Alexis Law's time card. Plaintiff alleges that he refused to sign the time card and that Law signed his wife's time card without authority. (Complaint, ¶23.) Despite his complaints regarding Alexis Law, defendants Law and Sullins took no action to discipline Alexis Law. (Complaint, ¶¶20, 23.)

Plaintiff avers that on June 14, 2012, he told Sullins that he could not continue to work in an environment where Alexis Law did not comply with work rules, and no action was taken to correct or discipline Ms.

Law. According to plaintiff, Sullins directed him to meet with defendant Law. (Complaint, ¶24.) Plaintiff asserts that on June 15, 2012, he met with Law and informed Law that his wife, Alexis Law, was not performing her work duties and that the situation had become "intolerable." Plaintiff asserts that defendant Law used obscenities toward plaintiff and concluded the meeting. (Complaint, ¶26.) Plaintiff asserts that immediately following the June 15, 2012 meeting with defendant Law, plaintiff met with defendant Sullins who terminated plaintiff. (Complaint, ¶27.)

Plaintiff claims a violation of the PWL as he had made good faith reports concerning wrongdoing, waste, misuse of government funds, monies and property by employee, Alexis Law, to the defendants. He was then terminated by defendants. He seeks damages to include attorney's fees, costs and punitive damages. (Complaint, ¶¶50-50, 54-55.)

Plaintiff also asserts a cause of action for wrongful termination, contending that he was discharged by defendants in violation of public policy and of the Borough Employee Handbook Rules and Regulations. He seeks compensatory and punitive damages. (Complaint, ¶¶57, 64-65.)

Standard of Review

Summary judgment will be entered where there is no genuine issue as to any material fact and is proper in cases in which "an adverse party who bears the burden of proof at trial has failed to produce evidence of facts essential to a cause of action or defense in which a jury trial would require the issues be submitted to a jury." *Jones v. SEPTA,* 565 Pa. 211, 216, 772 A.2d 435, 438 (2001); Pa.R.C.P. 1035.2. Although the evidence must be viewed in the light most favorable to the non-moving party, that party may not rely solely upon controverted allegations in the pleadings to overcome a motion for summary judgment. *See* Pa.R.C.P. 1035.3(a); *Young v. Pennsylvania Dept. of Trans.,* 560 Pa. 373, 375, 744 A.2d 1276, 1277 (2000). Specifically, the non-moving party must identify one or more issues of fact arising from the evidence of record controverting evidence cited in support of the motion or evidence in the record establishing the facts necessary to set forth the cause of action alleged in the complaint. *Id.* Finally, the failure of the party with the burden of proof at trial to adduce sufficient admissible evidence on an essential issue conclusively establishes that there is no issue of material fact and that the non-moving party is entitled to judgment as a matter of law. *Young,* 560 Pa. at 375, 744 A.2d at 1277; *see also Ertel v. Patriot-News Co.,* 544 Pa. 93, 100-101, 674 A.2d 1038, 1041-1042 (1996).

Plaintiff's evidence produced in support of his claims

In his complaint, plaintiff set forth a litany of reports he made about Alexis Law. During his sworn deposition, however, plaintiff testified that there were only three (3) personnel issues involving Ms. Law that he reported to Mr. Law. Further, plaintiff conceded that when he did complain to Mr. Law, corrective action was taken. Specifically, plaintiff testified that he reported to Mr. Law that Ms. Law: (1) left the Borough during work hours, (2) used the Borough computer for personal matters and had covered the window to her office with a coat rack to hide her misuse, and (3) had allowed an unauthorized person to ride on a Borough vehicle.

(*See* Lee Dep. at 22:15-23:17, 30:7-31:5, 34:6-18, 41:15-42:18, 47:11-48:9, 53:4-55:21, 138:2-139:7.)

Regarding Ms. Law leaving the Borough during work, plaintiff testified that he was told that Ms. Law had been seen by another Borough employee on Broad Run Road driving towards home. (*See* Lee Dep. at 30:7-31:5, 53:23-55:21.) Plaintiff conceded that Law informed him that he had sent Ms. Law to a mower shop on Broad Run Road. (*See* Lee Dep. at 53:23-55:21.) Plaintiff had no knowledge to the contrary and neither did his informants. (*See* Lee Dep. at 30:7-31:5, 53:23-55:21.) In addition, plaintiff testified that he informed Mr. Law that employees reported seeing Ms. Law at a church for an hour or more. (*See* Lee Dep. at 138:2-139:7.) However, there is no evidence that she was not there on Borough business or had not been otherwise excused.

Regarding the use of the Borough computer for personal matters, plaintiff testified he spoke to Mr. Law about the computer use on three (3) occasions. He conceded that each time Mr. Law counseled Ms. Law. She ceased her use of the computer for personal matters. (*See* Lee Dep. at 41:15-42:18, 47:11-48:9, 138:10-13.) Plaintiff also complained that Alexis had placed a coat rack in front of her office window to prevent employees from witnessing her unauthorized computer use. Mr. Law immediately made her remove it. (*See* Lee Dep. at 41:15-42:18.)

Finally, plaintiff complained to Mr. Law that Ms. Law had allowed an unauthorized person ride on a Borough vehicle, known as a "coachman" or "Gator." (*See* Lee Dep. at 22:15-23:17, 34:6-18.) After the complaint, he conceded that Ms. Law was disciplined with a verbal warning or "write up" by Mr. Law. (*See* Lee Dep. at 22:15-23:17, 34:6-18, 133:12-134:17.) This last charge was one of the false allegations made by Ms. Law's co-worker, Vincent Panetti, for which Panetti later apologized. Plaintiff failed to bring any other alleged personnel issues to Mr. Law's attention. He claims that this was due to his belief that nothing would be done regarding these other matters. (*See* Lee Dep. at 48:10-23.) However, plaintiff admitted that he had no reason to believe that corrective action would not be taken by Mr. Law and that Mr. Law had instructed plaintiff to discipline Alexis in the past. (*See* Lee Dep. at 22:15-23:17, 34:6-18, 48:10-49:2.)

Additionally, plaintiff has alleged that Ms. Law had exercise equipment in the Borough's park facility, exercised on Borough time, and that this was reported to plaintiff Lee. (*See* Lee Dep. at 76:21-77:13.) Although Ms. Law did have a chin-up bar placed in the facility and a stair-climber was stored in the same area, no one ever saw the equipment used. (*See* Lee Dep. at 77:14-16; Keen Dep. at 8:1-9:22; Wingenfield Dep. at 40:14-18; Formica Dep. at 25:2-4; Davis Dep. at 8:20-11:4.) Further, this issue was not reported to Mr. Law, who only became aware of the allegations when informed by defendant Sullins. Once made aware of the issue, Mr. Law spoke to Ms. Law and the items were removed. (*See* Lee Dep. at 79:7-80:15.)

In respect to use of Borough gasoline, the employees mentioned to plaintiff two (2) or three (3) times that Ms. Law had placed gas cans in

the back of the Borough truck or the "Gator" vehicle. One employee, Jim Wingenfield, had no idea where it was used and simply assumed it was not for Borough business, but no one saw her use the gasoline for personal use. (*See* Wingenfield Dep. at 13-14, 36-37.)

The court views the foregoing evidence in the light most favorable to the non-moving party as it analyzes plaintiff's two claims.

Wrongful Termination

Plaintiff did not allege in the complaint any tenure rights or any other reasonable expectation of continued employment by virtue of a contractual or statutory guarantee. He is consequently regarded as an employee at-will. *Paul v. Lankenau Hosp.*, 524 Pa. 90, 569 A.2d 346 (1990); *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1989). During oral argument, plaintiff's counsel agreed that Lee's employment was at-will. It is well established in Pennsylvania that an employer may terminate an employee at-will for any reason, with or without cause. In fact, the presumption of at-will employment is an extremely strong one. *See generally, McLaughlin v. Gastrointenstinal Specialists, Inc.*, 561 Pa. 307, 314, 750 A.2d 283, 287 (2000). It is true to say that Pennsylvania does not recognize a claim for wrongful termination in the case of at-will employment. *Weaver v. Harpster*, 601 Pa. 488, 975 A.2d 555 (2009). As an alternative theory, plaintiff argues that because the Borough's handbook contains a section concerning progressive discipline, he is entitled — and the Borough is bound to abide by — the benefits conferred by these provisions. Consequently, plaintiff contends that his employment is not at-will. He cites no authority for this proposition. Plaintiff does concede that the handbook was not made part of an offer or inducement for him at the time of his hire. The Borough did not follow the progressive discipline set forth in the handbook and, instead, plaintiff says he was summarily fired.

A terminated employee made a similar argument in the case of *Ruzicki v. Catholic Cemeteries Ass'n. of Diocese of Pittsburgh*, 416 Pa. Super. 37, 610 A.2d 495 (1992). After summary judgment was entered, he argued on appeal that the lower court erred because it was a question for the jury whether his status was terminable at-will or procedurally modified given the progressive discipline provisions in the employer's handbook. The Superior Court noted that a handbook could be enforceable against the employer if a reasonable person in the employee's position would interpret these provisions as evidencing the employer's intent to supplant the at-will rule. The handbook must, however, contain a clear indication that the employer intended to overcome the at-will provision. It is the function of the court to interpret the handbook to discern whether it contains evidence of the employer's intention to be legally bound. *Id.* at 42, 497. In that case, given the explicit disclaimer stating that the handbook did not affect an employee's at-will status, Ruzicki faced an "insurmountable burden" in arguing that the handbook converts him from an at-will employee to one who can only be fired through the use of progressive discipline articulated in the handbook. *Id.*

The Borough Employee Handbook is in the record and states that

"[t]his handbook is not a contract and does not guarantee employment for any specific duration . . . either you or the Borough Council may terminate this relationship at any time . . ." (Pl.'s Answer to Def.'s Mot. Summ. Jud. at Ex. H.) This language leaves no room for doubt and is an unassailable indication that the handbook is aspirational in nature. Nor was it provided as an inducement at the time of hire, and so cannot be considered an offer. Our Supreme Court stated in *Morosetti v. Louisiana Land & Exploration Co.*, 522 Pa. 492, 495, 564 A.2d 151, 152 (1989) that it is not sufficient to show the employer had a policy. A company may indeed have a policy on which they intend to act given certain circumstances or events "but unless they communicate that policy as part of a definite offer of employment, they are free to change as events may require." *Id.* at 496, 153. In short, the employer here is not bound by its own policy.

Plaintiff asserts that because he was terminated in retaliation for reporting wrongdoing and waste, bad management, and a loss of taxpayer dollars, his discharge is actionable because it violates public policy. A public policy exception to the at-will doctrine was recognized by the Pennsylvania Supreme Court in *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (1998). In that case, an at-will employee alleged a claim of retaliatory discharge for filing a workers' compensation claim. The court recognized the public policy exception and therefore a viable cause of action for wrongful discharge existed because the court viewed such termination as violating public policy. Pennsylvania courts have, however, only applied the public policy exception in cases of at-will employment where (1) an employer requires an employee to commit a crime, (2) an employer prevents an employee from performing a statutory duty, or (3) a statute prohibits discharge. *Denton v. Silver Stream Nursing & Rehab. Ctr.*, 739 A.2d 571, 577 (Pa. Super. 1999).

It is the judiciary's role to identify where there are clear mandates of public policy in the absence of legislation. Where the legislature has spoken, however, and the employee is furnished with a statutory remedy, the courts will not recognize a public policy. *Owens v. Lehigh Valley Hosp.*, 103 A.3d 859, 863 (Pa. Cmwlth. 2014).

Obviously, the public policy reason tendered by the plaintiff to recognize an exception in this case is identical to the facts and theories for his statutory PWL claim. Consequently, since the legislature has fashioned a statutory remedy, indeed has rather carefully sculpted the whistleblower statute, that constitutes the public policy enunciated in Pennsylvania. Therefore, this court holds that plaintiff's wrongful termination claim is not viable. *Owens, supra.*

Also instructive is the decision in *Rossi v. Pennsylvania State Univ.*, 340 Pa. Super. 39, 489 A.2d 828 (1985). Rossi was an instructor at the University who alleged that for years he complained about waste and mismanagement in his department causing a loss of taxpayers' dollars. He attempted to influence his superiors to change the way things were being accomplished without success. He was fired. Rossi contended that this was in retaliation for his efforts, and thus was wrongful as a viola-

tion of public policy. Summary judgment was entered in favor of the defendants by the trial court and, on appeal, the Superior Court affirmed. It wrote:

> "The question before us is whether there is a public policy against firing an employee who continuously complains about what he considers to be poor management of the unit in which he is an employee. In every situation in the public sector, where there is poor management, a loss of tax payers' dollars must necessarily follow."

*Id.* at 54, 836.

The Superior Court agreed that there was no public policy in this situation and pointed out that were it otherwise it "would have the unwise effect of transferring to the judicial forum the duty of evaluating the propriety of management decisions." *Id.* It further concluded that:

> "An employer may rid itself of a troublesome employee, without liability for wrongful discharge in the absence of violation of public policy."

*Id.* 54-55, 836-37.

The court views the foregoing expressions as fully applicable to the present case.

Pennsylvania Whistleblower Law (PWL)

Plaintiff claims he was fired in violation of the PWL. It provides that:

> "No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of *wrongdoing* or *waste. . .*"

§43 P.S. §1423(a). (emphasis added.)

These last terms are defined as follows:

> "*Wrongdoing.*" A violation which is *not* of a merely technical or *minimal* nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer.
>
> "*Waste.*" An employer's conduct or omissions which result in *substantial* abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources.

§43 P.S. §1422. (emphasis added.)

Plaintiff has the burden of proving that each report in issue is not merely of a technical or *minimal* violation of law in order to meet the definition of "wrongdoing." Likewise, plaintiff must at this stage produce evidence that his report of "waste" has resulted in *substantial* abuse, misuse, destruction or loss of municipal funds. Plaintiff does not really differentiate which of his reports are of "waste" and which concern "wrongdoing." His position seems to be that each complaint falls into both categories of reports.

Defendants for their part argue that plaintiff was not fired, but quit, and did not have the requisite good faith in making his reports for a variety of reasons. They posit that his motivation was wrapped up in a desire to leave the Borough's employ and move elsewhere. They contend plaintiff knew most of his complaints had actually been addressed and no disciplinary action had been visited on him. But the court considers none of this now, as it all constitutes disputed facts reserved for the fact finder.

The court does conclude, however, that the evidence produced by the plaintiff does not allow him to proceed because his reports do not meet the definitional requirements of "waste" or "wrongdoing."

In what is perhaps a case of first impression, the court is called upon to quantify the legislative's intent in its use of the adjectives "not minimal" and "substantial." At first blush, they appear to be different ways of saying the same thing. Their insertion is a clear limitation on what would otherwise be *all* waste and *all* wrongdoing. Instead, nominal, trivial, or very small violations are beyond the intended protections of the statute.

"Not minimal" and "substantial" are hardly words of art. They have their ordinary meanings. 1 Pa. C.S.A. §1903. One really need not consult a dictionary about them. "Minimal" means "very small or slight in amount." "substantial" means "considerable in quantity, significantly large." Black's Law Dictionary 4th Ed. defines "substantial" as "of real worth and importance, of considerable value."

Unauthorized use of computers in the work place has been held not to rise to the level of "substantial abuse, misuse, destruction or loss" of municipal funds or resources contemplated in the PWL, in *McClain v. Munn*, 2008 WL 975059 (W.D. Pa. 2008).

Such an analysis requires line-drawing by the court by virtue of the very presence of these adjectives in the statute. The court draws a line in this case. Plaintiff has not come close to it.

By any measure, plaintiff's alleged reports of "waste" and "wrongdoing" were thin even at the pleading stage. After producing evidence during discovery, many of the alleged reports of "waste" and "wrongdoing" evaporated because no violations of any law, regulation or code were founded in the first instance.

Whispers down the lane are no substitute for reports of significantly large violations or substantial loss of funds. Whatever is left here, an unexplained time card, perhaps a couple of cans of gasoline and mysterious wanderings by co-workers, are trivial in the extreme. As succinctly put:

"The Whistleblower Law is not designed to provide insurance against discharge or discipline for an employee who informs on every peccadillo of his fellow employees."

*Evans v. Thomas Jefferson Univ.*, 81 A.3d 1062, 1070 (Pa. Cmwlth. 2013).

Plaintiff's counsel suggested during oral argument that the adjective "substantial" only modified the next word, "abuse," and did not modify "misuse, destruction or loss of funds or resources." Accordingly, *any* misuse or destruction or loss of funds or resources would satisfy the definition of "waste." The court disagrees. Such an interpretation is an

abrogation of ordinary grammatical rules. Under generally accepted rules of syntax, an initial modifier will tend to govern all elements in the series unless it is repeated for each element. *Roberson v. Phillips Co. Election Commission*, 214 Ark. 480 (2014), interpreting the phrase "a person shall not run for election for more than one (1) state, county, or municipal office" as meaning that "one (1)" modifies each element of the following series "state, county or municipal," so that a person "could not run for election in more than one state office, more than one county office, or more than one municipal office." In *Lewis v. Jackson Energy Coop. Corp.*, 189 S.W. 3d. 87, 92 (Ky. 2005), the court said that it is widely accepted that an adjective at the beginning of a conjunctive phrase applies equally to each object within the phrase, i.e. modifies each noun or phrase in the series following, unless another adjective appears. *See also Aetrex Worldwide, Inc, v. Sourcing for You, Ltd.*, 2013 W.L. 5407040 (D.N.J. Sept. 25, 2013). Applying the initial modifier rule here, it is clear that "substantial" modifies each of the following nouns in the series.

Also suggested at oral argument was that the violation of the statute relied upon by the plaintiff in this case was the Pennsylvania Crimes Code, specifically the provisions concerning theft and theft of services, 18 Pa. C.S.A. §§3921, 3926. Plaintiff argued that the word "minimal" meant "*de minimis*" as found in that statute at 18 Pa. C.S.A. §312. The courts have refused to dismiss prosecutions under the *de minimis* provision notwithstanding that a robbery may have netted only, for example, 35 cents, *Com. v. Moses*, 350 Pa. Super. 231, 504 A.2d 330, (1986), or $1.59, *Com. v. Campbell*, 273 Pa. Super. 407, 417 A.2d 712, (1980). However, the legislature did not use "*de minimis*" but rather "not minimal," in the PWL. The undoubted reason for this is that the PWL is designed to apply in a myriad of different situations involving Federal or state statutes or regulations, municipal ordinances or codes of conduct or ethics. Resort to the criminal "*de minimis*" provision is far too restrictive to meet the obvious purposes of the whistleblower statute.

Defenses

The Borough also moves for summary judgment on the ground that it is immune from state law tort claims under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S.A. §8541-8564 ("PSTCA"). The court does not reach this or the other defenses of Law or Sullins, given that it has determined that plaintiff has no viable causes of action in the first instance.